Statement of the Case.
BREAUX, J.
Plaintiffs sue for rents and revenues on property described in their petition; and on their paying to defendant a promissory note for $1,165.53, interest, taxes, and Insurance premiums, and price of adjudication of a tax sale, less the amount of the rents and revenues derived from the property, then they asir that they be decreed the owners of the property, and, as such, placed in possession thereof.
The record discloses that Miss Pamela Moore on the 4th day of June, 1893, mortgaged the property now claimed, to Dr. Vincent Boagni, for the sum of $1,165.53; that on the 15th day of June, 1896, the property was sold at tax sale and adjudicated to Dr. Boagni for taxes due and delinquent thereon for the year 1894. The adjudicatee went in possession of the property a short time after the adjudication.
Within 12 months after this adjudication at tax sale, the adjudicatee, Boagni, executed and delivered an instrument under private signature in which he declared that he had bought the property at tax sale; that Miss Pamela Moore owed him a mortgage note of $1,165.53, hearing on the property. The following is a copy of the last clause of the instrument:
“I hereby declare that said Miss Pamela Moore shall have the right to redeem said property at any time within five years from this date upon payment of said sum, with interest payable annually, and also yearly taxes and yearly insurance; the extension to he granted yearly upon payment of said interest, taxes, and insurance.”
It was not signed by Miss Pamela Moore, to whom it was handed at the time. The document was recorded on the 29th of April, 1898, at the instance of Miss Moore, since deceased. Dr. Boagni is also deceased.
This suit is between the heirs of these parties. The present defendant, a- daughter of Dr. Boagni, and her late father, from whom she inherited the property, have had possession of the property, and paid taxes and other charges thereon.
Plaintiffs attack the tax sale on a number of grounds—mainly, as they aver, on the ground that a mortgagee, in or out of pos *493 session, cannot buy the mortgaged premises at tax sale, and thereby defeat the mortgagor’s title. They allege that Dr. Boagni, in taking possession of the property, collecting the rents and revenues, and executing the instrument before mentioned, under private signature, created an antichresis, under which defendant is bound to them.
Defendant, on the other hand, urges that she is the owner, claims the validity of the tax deed, and denies that the private act of February 27, 1897, executed by her father, is an antichresis. She sets out that it only evidences a pure indulgence on the part of her father to allow to plaintiff the opportunity of redeeming the property on the terms and conditions stipulated in the instrument, with which she avers Miss Moore did not comply; further, that this instrument was a mere pollicitation, which never became an accepted and complete contract. This suit for the property was brought within the five years granted to the owner within which to redeem.
Opinion.
The right of the mortgagee to buy property at tax sale, upon which his mortgage bears, is one which cannot well be denied to him, unless it was his duty in some way to pay the taxes. It was not his duty in this instance. His relation to the land in question was not such as to preclude him from becoming a purchaser. He was at liberty to buy, since it was not his duty to pay the taxes. Learned counsel for the plaintiff refers us to the decision in Renshaw v. Stafford, 30 La. Ann. 849, as sustaining the view that a mortgagee cannot acquire at tax sale the mortgaged property to the prejudice of the mortgagor.
That decision has no application here, for it relates to the owner of the property sold for taxes as one who cannot buy it in, and thus acquire title to the prejudice of the mortgagee. The decision treats of entirely different questions from that involved here.
The owner and mortgagor is under an obligation to pay the tax—to “keep down the taxes,” to quote from the decision in question-while the mortgagee, as in our case, is placed under no such obligation.
Boagni, the mortgagee, had a complete legal title, and it gave him the right to go in possession as he did a short timq after the adjudication at tax sale.
He was lawfully in possession of the property. No one objected to his going into possession.
The tax statute in force at the date of the adjudication at tax sale was Act 88 of 1888, which provides that the purchaser may take actual possession with the consent or acquiescence of the tax debtor, or otherwise, provided no force or violence shall be used.
“They have the right to take possession themselves whenever they can do so without difficulty.” Martin v. Langenstein, 43 La. Ann. 791, 9 South. 507.
Having gone into possession as owner under sufficient title, it follows that his mortgage fell with his purchase, as he could not be mortgagee and owner of the same property at the same time.
The question of possible revival of the right discussed in the brief, in case of the redemption of the property from the tax sale, is not one with which we are particularly concerned at this moment. We only mention it in passing. It has no immediate bearing upon the issues. We leave this branch of the issues with the statement, sustained by decisions, that the right (that is, the original mortgage) may be revived in certain contingency, which does not here arise. New Orleans Insurance Association v. Labranche et al., 31 La. Ann. 839.
This brings us to a consideration of the effect to be given to the document of February 27, 1897, specially referred to in our statement of the facts, and partly therein copied.
It unquestionably gave, on the part of Boagni, by whom it was signed, an extension of time within which to redeem the property. Whether this document be considered in the light of an antichresis or not, the right to redeem was extended five years from the date of the instrument. The five years not having elapsed at the date the suit was filed, it follows that plaintiffs are in time to redeem the property.
It remains for us to determine the conditions upon which the redemption is to be made. They are set forth, expressly or by implication, in the document of February 27, 1897. Mrs. Moore retained the instrument, and, in person, called on the clerk of the *495 court and directed it to be recorded. Moreover, the time within which to redeem had not been recalled or revoked at the date this suit was brought.
Having, as we take it, accepted the conditions, the owners (Miss Moore and her heirs, the plaintiffs) are bound by them. But il remains, they have no right to redeem, except on such conditions as are stipulated in the document, and this expressly includes payment of the mortgage indebtedness of plaintiffs, to which we have before referred.
We pass to the question of rent and revenues (another issue of the case) collected by defendant or her father after the purchase made by the latter at tax sale. The property is urban, and from it rents have been collected since.the tax sale.
The right of the parties, as relates to this rent, is to be determined mainly by reference to the document of February 27, 1898, copied in our statement of the facts.
Plaintiffs invoke this document as being an antichresis. That view leads to the conclusion that the antichresist owes rent and revenue collected of the property of his debt- or from the date of the pledge. We have not found it possible to agree with that proposition. We will state here we do not think that it was the intention of the creditor to retain the rent. In that point of view, one of the essential elements to constitute an antichresis is missing.
The property, under the tax laws, if it were not for the special instrument in question, would not be owned by the plaintiffs (heirs of Miss Moore). It would be owned by defendants (heirs of Boagni), subject to the redemption before mentioned. The buyer at tax sale, considered only in the light of a tax sale, would have been entitled to the rent, because he became the owner by the adjudication at tax sale, subject to redemption. The buyer at tax sale would also have been entitled to the rent, because it is the plain provision of the tax statute. From the date the deed is recorded, “all the rents and revenues of the property belong to the purchaser.” Acts 188C, p. 154, No. 98, § 67. So that strictly there was no antichresis, as defendant, not plaintiff, was the owner.
Evidently it was not the intention of Dr. Boagni to hold this, his debtor, during the time granted within which to redeem, to the strict letter of the tax statute.
Manifestly, it was not his intention to claim the penalty, or anything, in fact, except the amount of his mortgage and the taxes. This is the plain inference from the tenor of the instrument in question. To allow the rent, we think, would be to allow more than he expected.
The argument now is that he was entitled to the rent, qnd that it should therefore be decreed to defendant.
Following that line of reasoning, we would have to hold that, although he did not mention penalty on the taxes paid, defendant is none the less entitled to penalty on all the taxes paid, for that, also, would be one of his rights if we were to hold that the tax laws apply as if no written promise had been signed by the late Dr. Boagni.
This, manifestly, never was the intention, as expressed in the instrument before mentioned.
In extending the time as he did for redemption, and binding himself as he did, we think it fair to infer that he intended to return property and rent to the former owner, Miss Moore, provided she paid him the amount of her indebtedness.
The creditor', Boagni, stipulated for the payment of principal and interest, taxes and insurance, which would be due him at the date of the exemption—nothing else. It seems to us that, careful business man as he was, upon payment of these items referred to he intended to let the debtor, Miss Moore, have his property.
If the creditor was to retain the items just above referred to, and rent, the five years to redeem would have been a worthless right.
Moreover, it is not probable that he, the creditor, would have stipulated for the return of insurance money paid by him, if he intended to retain rents for his own account. Collecting rents as his own, the least he could have done would have been to pay insurance on his own property. He would not, as.we think, have sought to retain rent, and charge the debtor with insurance on the property besides. The instrument in question is not in the usual form. Much devolves upon construction. Our decision dealing with a special instrument is necessarily sui generis.
*497 By reason of the law and the evidence being in favor of plaintiff, the judgment appealed from is affirmed.