## SIMMONS et al. v. KELLY.

### No. 1635.

Court of Appeal of Louisiana. First Circuit.

Oct. 7, 1936.

Harold J. Moore, of New Orleans, for appellant.

J. Monroe Simmons, of Covington, for appellees.

LE BLANC, Judge.

In this case, the trial judge handed down written reasons for judgment, which we take the liberty of reproducing in full:

"This is a suit to quiet a tax title made by the sheriff of St. Tammany parish, La., on the 24th day of June, 1916, for the state and parish taxes for the year 1915, covering the property described in the petition, under an assessment in the name of the defendant, at which one J. Joachim became the tax purchaser. Plaintiffs claim through this tax purchaser as owners of the property in the proportion of an undivided half interest each, and ask that the tax title be confirmed and they be decreed the owners of the property.

"The defense is that the property was bought at the tax sale by said J. Joachim for the benefit of the defendant who at the time owed said tax purchaser a note secured by mortgage and vendor's lien on the property; and that the defendant subsequently paid to said Joachim the said mortgage and the amount of the tax adjudication. The defendant claims that he has been in possession of the property since the said tax sale.

"On February 26, 1914, said Jacob Joachim executed a deed to the defendant covering said property and retained a mortgage and vendor's privilege on the property to secure a note of $100 signed by defendant representing the purchase price of the property, which note matured February 26, 1919, five years from date. In this deed it is recited that the taxes on the property up to and including the year 1913 had been paid, the purchaser, defendant here, agreeing to pay the taxes of 1914 and future years. There was also a clause inserted in this deed, just following the clause relative to taxes as stated above, whereby it was stipulated that in case the taxes were not punctually paid at maturity the vendor (manifestly intending to be the vendor, although the word is not clear in the typewritten copy introduced in evidence) or any future holders of the note were to pay the same with full subrogation to all of the vendees rights thereunder, and the note would, by reason of said default in the payment of the taxes, become due and exigible. This clause, although very ambiguous, clearly means nothing more than the failure of the purchaser to pay the taxes as he agreed to do in the preceding clause of the deed would authorize the vendor or holder of the note to foreclose the mortgage before the maturity of the note. Any other construction on this clause would render it absurd and meaningless in view

of the plain provisions whereby the purchaser agreed to pay the taxes of 1914 and subsequent years. There was nothing binding in this clause on the vendor or the holder of the note to pay the taxes in case of the failure of the purchaser to do so, but this clause was evidently intended solely to give the vendor or the holder of the note the right to do so and then consider the note due and proceed to enforce the same by seizure and sale of the property.

."There is no proof whatever in the record to show that the tax purchaser, J. Joachim, agreed to purchase the property at tax sale for the benefit of the defendant. On the contrary, on February 16, 1920, Joachim agreed to sell this property to defendant, Kelly, for a recited consideration of $182.85, payable $30 cash and the remainder at $5 per month. Defendant admits, or rather does not deny signing this contract. It is probable that the consideration fixed for the purchase of the property was calculated on the balance due on the mortgage note, interest, and the amount of the tax adjudication. Defendant says he was allowed a credit of $35 for work, and paid $65 in cash. The allowance in all probability arose about the time of the contract representing the first payment. However that may be, the defendant voluntarily surrendered the contract and all rights thereunder by a written document under date of March 29, 1924. This is clear evidence that he had not paid the amount called for in the contract, and shows that he no longer claimed any title or right to the property. He never lived on the property or cultivated the same except a small part on the north side which was an encroachment from the adjoining property on the north which defendant cultivated and on which he lived. From 1923 to 1931, defendant paid no taxes on the property. This indicates that during that period of time Kelly made no claim to the land. It was not until 1931 that he had the property assessed to him again. This action on his part evidently arose from the fact that he received a letter from the son and one of the heirs of J. Joachim asking him about the property and its status. The son of J. Joachim evidently did not know about the condition of the property, as he was not familiar with the affairs of his deceased father.

"There is no obligation on the part of the mortgagee to pay the taxes on the property of the mortgage debtor in the absence of a special agreement to do so. Nor is there any reason why the mortgagee cannot become the purchaser of the mortgaged property, unless he has bound himself in some way to pay the taxes, or has misled the mortgage debtor or practised some fraud on him. Moore et al. v. Boagni et al., 111 La. 490, 35 So. 716; Wall et al. v. Hamner, 182 La. 1049, 162 So. 769. There is nothing in this case to show either directly or by inference that Joachim, the mortgage creditor, ever agreed to pay the taxes for Kelly, nor is it shown that he misled the defendant. On the contrary, defendant, by agreeing to purchase the property from the tax purchaser in 1920, recognized the validity of the tax sale. Even though it be assumed that the consideration fixed in this contract of purchase in 1920 of $182.85 represented the full amount due by defendant to Joachim, and was in the nature of an agreement of extension of the redemptive period, as was the case in Moore v. Boagni, supra, yet defendant did not comply with the agreement of redemption, but voluntarily surrendered the same on March 29, 1924. If defendant had, before making default in the payments under his contract of February, 1920, tendered to the tax purchaser the amount covered by the agreement, under the theory that it represented the amount fixed as necessary to redeem the property as was done in the Moore v. Boagni Case, there might have been some ground to support defendant's position in this case.

"Plaintiff has filed a plea of estoppel based on the fact that defendant, by agreeing to purchase the property from Joachim, the tax purchaser, has estopped himself from disputing the title of the tax purchaser.

"In my opinion this plea is well founded. The case is controlled on this point by a very similar case decided by the Supreme Court. Muller v. Hoth, 110 La. 105, 34 So. 162. The plaintiffs are entitled to judgment both on the facts of the case and under the plea of estoppel."

The case was submitted in this court without oral argument and we find no brief in the record on behalf of the defendant, appellant. No error has been assigned or pointed out in the judgment appealed from, and it carries with it the usual presumption of correctness. Aside from that presumption, however, we have carefully gone over the record and given

consideration to all the points involved in the case, and we find ourselves in thorough accord with the written reasons herein quoted in full. The case is therein accurately stated, the facts are carefully analyzed, and the law has been properly applied. As stated by the district judge, the case is with the plaintiffs both on the merits and on the plea of estoppel. Whatever we might add would be in the way of repetition, which, of course, we deem wholly unnecessary.

Judgment affirmed, defendant, appellant, to pay all costs of appeal.