PIAMITER, Justice.
 

 Involved here is the question of ownership of the Northeast Quarter of Section 30, Township 15 South, Range
 
 9
 
 East, Southwestern Land District of Louisiana, Parish of St. Mary.
 

 In the petition, plaintiffs set forth their chain of title which commences with a patent issued by the State of Louisiana to one. D. B. Byrum of date February 12, 1900. Further, they averred that' the defendants also lay claim to the land by recorded titles, all of which are null, void and of no effect. They prayed for judgment recognizing them as the true and lawful owners in indivisión of the property, entitled as’ such to the possession thereof.
 

 The suit was instituted on July 8, 1946, under the provisions of Act No. 38 of 1908, LSA-R.S. 13:5062, plaintiffs alleging that neither they nor the defendants are in possession. Alternatively, they showed that they desired to assume the position of plaintiffs in a petitory action in the event it be found that the defendants have actual possession.
 

 The defendants excepted to the form of the action, averring that they are in the actual, physical possession of the land and have been for many years. The court received evidence at a hearing of the exception, concluded that the defendants had established possession in themselves, and ruled that the case should proceed as a petitory action.
 

 Thereupon, the defendants answered, setting forth their chain of title and pleading specially the acquisitive prescriptions of 10 and 30 years. They trace title through a deed dated October 29', 1902, under which Donelson Caffery, Jr., and J. Sully Martel purchased and acquired the- land from Arthur Martel, back to an adjudication at tax sale in favor of the latter made by the tax -collector of the Parish of St. Mary on August 25, 1900. This tax sale, the invalidity of which is asserted by plaintiffs, resulted from the nonpayment of taxes for the year 1899 which were assessed and levied against the land following the recordation .in the Clerk’s Office of St. Mary Parish of a certificate, signed by the Re-g- ■ ister of the State Land Office under date of
 
 *6
 
 June 21, 1898, reciting that D. B. Byrum had purchased the property and other lands from the State of Louisiana.
 

 After a trial of the case as a petitory action the district judge decreed the defendants to be the %wners and dismissed plaintiffs’ suit. As shown by his written reasons for judgment he upheld the record title of defendants and did not pass upon their pleas of prescription.
 

 Plaintiffs appealed from the judgment, and they urge here that the district court erred: (1) In finding that the defendants had actual possession of the property for more than one year previous to the institution of this suit; (2) In not holding that the tax deed to Arthur Martel, from which defendants’ title emanates, was absolutely null and void; (3) In no.t overruling defendants’ pleas of prescription of 10 and 30 years.
 

 We shall consider first the plea of prescription of 10 years. Although not passed upon by the district court, it was fully tried there; it is a matter which may be pleaded before this court, Code of Practice Article 902; and the plaintiffs are complaining here that it should have been overruled by the trial judge.
 

 As stated in Civil Code Article 3479 the following four conditions must concur for acquiring the ownership of immovables by the prescription of 10 years: . .
 

 “1. Good faith on the part of the possessor.
 

 “2.
 
 A title which shall be legal, and sufficient to transfer the property.
 

 “3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
 

 “4.
 
 And finally an object which may be acquired by prescription.”
 

 The required incidents respecting possession are described in Civil Code Article 3487 as follows:
 

 “1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
 

 “2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.”
 

 Obviously, the property in dispute is an object which may be acquired by prescription. Too, the deed relied on by defendants under their plea is legal and translative of ownership. This instrument, executed on October 29, 1902 by Arthur Martel in
 
 *8
 
 favor of Donelson Caffery, Jr., and J. Sully Martel, appears to be regular in every respect and it evidences a cash sale transaction in which the entirety of the land in question and other properties were conveyed. Again, plaintiffs have neither contended nor offered ■ any evidence to show that the named purchasers, or the defendants claiming from them, were in bad faith; and good faith is always presumed. Civil Code Article 3481.
 

 In resisting the 10 years’ prescription plea plaintiffs -contend only that (a) defendants have not had sufficient possession of the land, and (b) with respect to- the defendant-claimants of the one-ha-lf interest acquired by J. Sully Martel under the deed of 1902, “during no continuous period of ten years have those defendants had both title to, and possession of, the property here in controversy.”
 

 As to the question of possession the trial judge, when sustaining defendants’ exception that this suit was improperly brought under the provisions of Act No. 38 of 1908, mads the following pertinent observations in writing:
 

 “The possession claimed by the defendants consists of having had the land surveyed, maintaining visible monuments along its boundaries, trapping it for fur bearing animals, payment of taxes and the execution of mineral leases.
 

 “All o-f these facts they have established by evidence.
 

 «K s|» »}» í}> íjí
 

 “The land involved in this suit is low coastal marsh land. For eleven successive years defendants executed a trapping lease, and under the lease, the land was actively trapped -by the same person, Simon Barras. Some twenty years ago the land was surveyed by Mr. Walter Y. Kemper, and its boundaries established. These boundaries were continuously maintained by the trapper, 'by sticking upright into the -ground some bamboo poles and some wooden posts. These were maintained in such frequencies along the boundaries that the lines were visible to the eye.
 

 “There was never any camp or other building erected on the property so the trapper would live some distance from it, from three-fourths to one mile during the trapping season. This season lasts from December to- February. The trapper would move, preparatory to actual trapping, a few days before the opening of the trapping season, and remain there a few days after its close, to properly attend to the usual duties connected with trapping. He would seldom visit the property outside of the trapping season, and when he did, it was to watch for trespassers after the close of the season,
 
 *10
 
 or to ascertain the prospects of the next catch, before the opening of the next season.
 

 “Both plaintiffs and defendants show payment of taxes on the property from the year 1930 through 1946. Defendants also show the execution of a mineral lease affecting the property dated December 10th, 1945, for a primary term of five years.
 

 * * * * *
 

 “Plaintiffs maintain that exceptors [defendants] could, or should, have fenced it in. It is a known fact that a fence, is not necessary for the purpose of carrying on the business of trapping marsh lands. It is also quite evident that it is not practical. No material benefit would ibe derived from the erection of a fence, and would be exceptionally difficult and expensive to construct, and even more expensive to maintain, as its life in the marsh would be quite short. Plaintiffs have not pointed out just why defendants should build a fence, in order to carry on the business of trapping this land. I know of none. (Brackets ours.)
 

 “The same situation exists to plaintiffs’ argument about the erection of a camp on the property. If there is no necessity for it, and there seems to be none as the land is being trapped without it, then there exists no reason why one should be built.
 

 “Were the construction of these two improvements necessary to carry on the successful trapping of this property, then their absence would require us perhaps, to take a different view of plaintiffs’ contention.
 

 ‡ * ;fc ‡
 

 “Therefore, under the circumstances of this case, we find that the defendants have exercised all of the acts of possession that the type of land involved in this case can customarily support, although the property is not enclosed and inhabited or cultivated, * *
 

 The facts so found by the trial judge relative to possession are fully supported' by the evidence taken at the hearing of the exception which he then had under con■sideration. Also, they are in keeping with and amplified by additional evidence later adduced during the trial of the merits, including the pleas of prescription.
 

 All of such evidence (by stipulation it was agreed that all be considered on the trial of the merits) clearly establishes that the land, typical of its low and marshy nature, is covered with water the greater part of the time, is devoid of timber, and is uncultivatable. The tract’s surface is suitable only for trapping, and for that purpose one William T. Landers obtained and operated under a lease from these defendants as early as 1924.
 

 More recently, particularly since December of 1935, or for some 10 years prior to
 
 *12
 
 the filing of this suit on July 8, 1946, there has been, an annual and systematic trapping by lessees of these defendants without any interference. Thus, for the 1935-36 trapping season (December to February) one Willie Sons, Jr., trapped the land under a lease from the Caffery and Martel interests. Thereafter, from the same interests, one Simon Barras held leases; and each season he conducted the trapping. The leases under which Barras operated were in writing, and some were for terms of three years each.
 

 During each season of the above mentioned 10 year period, the evidence conclusively shows, the boundaries of the land were clearly defined by wooden posts, bamboo poles and flags; and the established lines were respected both by the lessees of the defendants and by those persons trapping on adjoining lands. At times, of course, some of the line markers rotted or were destroyed; but replacements were made from year to year.
 

 Considering that the land’s surface is suitable only for trapping purposes, and in view of the other facts and circumstances above shown, we think it can be correctly said that for at least 10 years prior to the filing of this suit the defendants have enjoyed actual, continuous, uninterrupted, peaceable, public and unequivocal possession of the disputed tract. As stated in Civil Code Article 3426, “Possession is the detention or enjoyment of a thing, which we hold or exercise by ourselves, or by another who keeps or exercises it in our name.” And according to Civil Code Article 1924, “What shall be considered a delivery of possession is determined by the rules of law, applicable to the situation and nature of the property.” Again, as said in Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574, 575:
 

 “The corporeal possession necessary to support the prescription is governed by the use for which the land is destined. If it is for pasturage, the grazing of cattle upon it is an act of corporeal possession. From its nature, it may forbid an actual residence or cultivation. Timbered land may
 
 b&
 
 inclosed, trees cut, roads run through it, and many other similar acts to show the intention to subject it to one’s dominion.”
 

 In arguing that defendants did not have the required possession, plaintiffs’ counsel rely on Blanchard v. Martel, La.App., 146 So. 480 and Pittman v. Bourg, 179 La. 66, 153 So. 22. These cases are distinguishable -from the instant controversy. In the Blanchard case the court found the boundaries of the land to be unmarked and, further, that the trapping by defendants’ lessees was not without interference. In the Pittman case the court was not considering the question of possession per se, as here. It was merely seeking to determine whether or not the acts relied on by plaintiffs to support their possessory action
 
 *14
 
 were sufficient to constitute a disturbance in law or in fact against the established possession of the defendants.
 

 Plaintiffs’ counsel further contend, as above shown, that the defendants claiming the J. Sully Martel one-half interest did not have title thereto continuously during such 10 year period, even though in actual possession. In this connection they direct attention to a tax sale of that one-half interest occurring on June 27, 1938 and to a redemption deed executed December 26, 1940. The answer to the contention seems to be that since the interest was timely redeemed those defendants were never legally divested of title by the tax sale. Under our jurisprudence the title acquired by an adjudicatee at a tax sale is an inchoate one during the period for redemption and is defeated by the exercise of that right. Moore v. Boagni, 111 La. 490, 35 So. 716; Spears v. Spears, 173 La. 294, 136 So. 614; Blocker v. Continental Securities Corporation, La.App., 157 So. 155. But if we be incorrect in this view, it is certain that the tax sale was an absolute nullity. The record discloses that the taxes for which the sale was made were paid by these plaintiffs, there having been a dual assessment of the property.
 

 We conclude, therefore, that defendants’ plea of 10 years’ prescription acquirendi causa is good. And this conclusion renders unnecessary a consideration of the record titles of the respective litigants and also defendants’ plea of prescription of 30 years.
 

 For the reasons assigned the judgment appealed from is affirmed.