HARDY, Judge.
This suit was instituted by plaintiff to quiet and confirm a tax title to a tract of land in Rapides Parish in accordance with *844 Article X, Section 11 of the Constitution of 1921, LSA-Const., and the provisions of LSA-R.S. 47:2228 et seq. Defendants answered plaintiff’s petitions, and, additionally, filed an exception of no right and no cause of action which was referred to the merits, with the provision that the right be reserved to the court “to decide exceptions independent of the suit”. The trial of the case on the merits consisted of a stipulation of fact and the introduction of numerous exhibits. After trial there was judgment in favor of plaintiff confirming and quieting title to the property particularly described and perpetually enjoining defendants from setting up any right, title or interest to the property. From this judgment defendants have appealed.
Before this court counsel for defendants insistently re-urges the exception of no right and no cause of action. It is noted in the written opinion of the district judge that he disposed of the issue raised by the exception on the ground that the conclusion on the merits of the case necessarily comprehended a resolution of the issues tendered by the exception. While this is true, we are disposed to feel that defendants are entitled to an independent consideration of the issues raised by their exception, and, if their arguments prove to be well founded, it follows that they are likewise entitled to a definitive ruling based upon such exception.
The facts were established without dispute, and we set forth those which are material and pertinent to a consideration of the issues of law. Henry Joseph purchased the property in dispute from the Willow Glen Land Company on July 30, 1940, at which time he was living with Lelia Johnson, his common-law wife. The property was occupied by the couple as a residence until the death of Henry Joseph, which occurred on October 20, 1943. At tax sale on September 25, 1943, Gus Killen purchased the property. By judgment dated December 3, 1943, Eva Joseph, daughter of Henry Joseph by a previous marriage, was recognized as his sole and only heir and placed in possession of the subject property. Eva Joseph redeemed the tax sale, and a tax redemption certificate was executed by the Sheriff & Ex-Officio Tax Collector of Rapides Parish in favor of Eva Joseph, on March 5, 1946, but this certificate was not recorded until July 24, 1954.'
By instrument dated July 30, 1953, Eva Joseph sold the property to James A. Bennett for a recited cash consideration of $4,000, and by instrument dated January 30, 1954, Bennett sold the property to Neal Daspit for a recited cash consideration of $4,500.
After the death of Henry Joseph, and up to the time of the sale to Bennett, Lelia Johnson, the surviving common-law wife of Henry Joseph, had continued to occupy the residence with the permission and by the sufferance of the owner, Eva Joseph. Following the sale to Bennett, Lelia Johnson refused to vacate the premises and Bennett instituted an eviction suit, which was countered by a possessory action filed by Lelia Johnson in September of 1953, in connection with which suit a notice of lis pendens was filed.
By instrument dated March 23, 1954, Mrs. Ada S. Killen, therein described as the widow of Gus K. Killen, deceased, sold and conveyed to Woodrow W. Killen “all of her right, title and interest in and to” the property in dispute for a recited cash consideration of $25.
Similarly, by instrument dated April 1, 1954, Willie W. Killen and Mrs. Estelle K. Stevens, represented therein as being a son and daughter of Gus K. Killen, deceased, sold and conveyed .“all of their right, title and interest in and to” the property in dispute to Woodrow W. Killen for a recited cash consideration of $25.
By another instrument dated April 1, 1954, Mrs. Maude K. Sharbono, Mrs. Pauline K. Williams, Loyd E. Killen, Mrs. Inez K. Marler and Mrs. Hazel K. Casey, recited in the instrument as being the daughters *845 and son of Gus K. Killen, deceased, sold and conveyed “all of their right, title and interest in and to” the property in dispute to Woodrow W. Killen for a recited consideration of $50 cash.
By instrument dated April 12, 1954, Woodrow W. Killen sold and conveyed to Chester D. Wells, plaintiff herein, for a recited consideration of $425 cash, the property which was described as follows:
A certain piece, parcel or lot of ground, together with all buildings and improvements thereon, and all rights, ways and privileges thereunto belonging or in anywise appertaining, being, lying and situated in the Parish of Rapides, State of Louisiana, and being 4.35 acres 100' on Fairgrounds Rd. Being the same property acquired by Gus K. Killen at tax sale in the name of Henry Joseph, of date Sept. 25, 1943, recorded in Conveyance Book 177, page 377, of the records of Rapides Parish, Louisiana, acquired by this vendor by inheritance from his said Father, Gus K. Killen, and by purchase by said vendor from the widow of said Killen, and the other heirs, all as shown by deed recorded among the conveyance records of Rapides Parish, La.
Following judgments in favor of Bennett in both the eviction suit and the possessory action, plaintiff instituted this suit for the purpose of quieting and confirming the alleged tax title which he claims to have purchased from the Killens.
Taxes on the property for the years 1944 to 1953, inclusive, are shown to have been paid by Eva Joseph, and the taxes for 1954 were paid by James A. Bennett.
Named as defendants in this action are Eva Joseph (Keesee), James A. Bennett and Neal Daspit.
As we have above observed, counsel for defendants charge error in the failure of the district judge to sustain the exception of no right of action. The contentions made by counsel, which succinctly state the basis and burden of their arguments, are set forth in brief as follows:
“1. The inchoate right which Gus Killen had to confirm a tax title was extinguished prior to his death, so he could not bring this suit.
“2. There was no property right which Gus Killen could or did pass on to his heirs pertaining to this property, hence Gus Killen’s heirs acquired nothing.
“3. Plaintiff Wells acquired only such litigious rights as his vendors had, and since they could not bring this suit, neither can Wells.
“4. Therefore, Wells has no right of action.”
Reducing the argument to its barest fundamental proposition, counsel urges that this plaintiff purchased only a litigious right, which right had been extinguished prior to such purchase. If this be true, it would necessarily follow that plaintiff has acquired no rights which can be enforced in this suit.
The nature of the rights acquired by a purchaser at tax sale appears to have been first defined by our Supreme Court in Thibodaux v. Keller, 29 La.Ann. 508, in which the opinion declared that the rights of a tax purchaser, pending the lapse of the redemptive period, are inchoate. This characterization has been many times repeated.
Reference to Black’s Law Dictionary, Fourth Edition, discloses the following pertinent definitions:
“Inchoate. Imperfect; partial; unfinished; begun, but not completed; * % **
“Inchoate Interest. An interest in real estate which is not a present interest, but which may ripen into a vested estate, if not barred, extinguished or divested.”
In connection with defendant’s exception we are called upon to determine the *846 resultant effects of such right as was acquired by Gus Killen under his purchase of the property involved in this suit at tax sale.
Obviously, Gus Killen acquired an inchoate interest, that is, a contingent interest. We have carefully examined the jurisprudence with reference to interpretations placed upon the nature and effects of such an interest by our courts. In Moore v. Boagni, 111 La. 490, 35 So. 716, the court cited Thibodaux v. Keller, supra, Cooley on Taxation, and the Pennsylvania case of Singer’s Appeal, 7 A. 800, 4 Sadler 430, to the effect that a tax adjudicatee acquires only an inchoate title which has no practical results or effects until after the redemptive period has lapsed.
In Spears v. Spears, 173 La. 294, 136 So. 614, 617, the opinion contained this statement:
“It is urged that this [tax] sale had the effect of divesting plaintiffs of their interest in the property. This contention, however, is not well founded.” (Emphasis supplied.) And further:
“ * * * the sale back to Spears amounted to nothing more than a redemption of the land reconveyed, which necessarily destroyed the effects of the tax sale to the extent of the recon-veyance.” (Emphasis supplied.)
In Blocker v. Continental Securities Corp., 157 So. 155, 156, this court declared:
“The title acquired by an adjudicatee at a tax sale is an inchoate one during the year for redemption and is defeated by the exercise of that right; * * * ” (Emphasis supplied.)
The latest pronouncement is to be found in Kelso v. Caffery, 221 La. 1, 58 So.2d 402, 406. The opinion by Mr. Justice Hamiter contains the following pertinent statement:
" * * * since the interest was timely redeemed those defendants were legally divested of title by the tax sale. Under our jurisprudence the title acquired by an adjudicatee at a tax sale is an inchoate one during the period for redemption and is defeated by the exercise of that right.” (Emphasis supplied.)
In other words, an inchoate right is the direct opposite of a vested right, which was clearly defined by Mr. Justice Moise in Tennant v. Russell, 214 La. 1046, 39 So.2d 726, 728, as follows:
“A right is vested when ‘the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete, and unconditional, independent of a contingency, and a mere expectancy of future benefit, or a contingent interest in property * * * does not constitute a vested right’.”' (Emphasis supplied.)
The conclusion, therefore, is inescapable that when Gus Killen became the tax purchaser he acquired an inchoate or contingent right. It is further indisputable,, on the basis of the above authorities, that the redemption by Eva Joseph “defeated” and “destroyed” the effect of the tax adjudication.
With respect to the property in dispute, at the time of his death Gus Killen could have claimed nothing. As a consequence he transmitted nothing to his heirs.
We must now concern ourselves with rights acquired by this plaintiff through the several Killen conveyances, which we have above detailed. By the-instruments themselves the plaintiff, Wells,, acquired only such rights, title and interest as the self-styled Killen heirs possessed.. As we have above attempted to demonstrate,, they possessed nothing. We think plaintiff’s knowledge of the frailty of his claim, is implicit in the instrument by which he-acquired, not the least of which circum *847 stances would be the nominal consideration which was paid for whatever right, if any, he acquired. It seems obvious to us that plaintiff acquired only a possible litigious claim. He was put on notice by an examination of the public records, if any was made, that there had been no transmission of title from Gus Killen to his heirs. This circumstance brings this case within the definite principles enunciated by the Supreme Court in Otis v. Texas Company, 153 La. 384, 96 So. 1, 7. We quote from the opinion of the court, on rehearing, the following pertinent pronouncements:
“In our former opinion we held that as good faith was presumed, and as there was nothing in the record to impugn the good faith of the plaintiffs, they were in the position of innocent third persons dealing upon the faith •of the public records, and were entitled to recover on the strength of their title. We were in error in so holding. All that plaintiffs acquired were the rights, whatever they might he, of the heirs of Jerry Lewis in the property in •controversy, plus a law suit to establish those rights. They do not show ■that they acquired from a derivative .title of record in the name of their vendors or of Jerry Lewis, the father •of their vendors, but they rely solely upon the record of the ex parte judgment of possession rendered in the succession of Jerry Lewis.
* * * * * *
“Had the plaintiffs used but ordinary •care and diligence in having the records searched, they could have easily ascertained the defects in the title and that they could not acquire the property from the heirs of Jerry Lewis for the simple reason that these heirs had no right, title, or interest in said property.
“Nor for a further reason can the plaintiffs be considered as innocent third persons purchasing in good faith. Their very act of purchase in express terms shows that they were ptirchasing a litigious right-, that they were acquiring with knowledge that the title was in dispute and that they would have to resort to a law suit to establish their ownership. Hence, they ac-q^lired no greater right than their vendors 'had.” (Emphasis supplied.)
We wish it understood in connection with this opinion and its interpretation that none of our pronouncements are to be considered as having any bearing upon the so-called “law of registry” which, on the merits, constitutes plaintiff’s principal reliance. Our development of this opinion has been intended to apply solely to defendants’ rights under the exception of no right of action which was interposed. The facts recounted and the effect of these facts are to be considered only with relationship to the exception. The effect of the “law of registry” is not at issue in the consideration of defendants’ exception. For this reason we find it unnecessary to enter into a detailed discussion of the case of Blanchard v. Estate of Hy Garland, 6 La.App. 508, which the district judge accepted as authority for his holdings on the merits.
 Defendants take the position that it was incumbent upon plaintiff to show that he acquired an existing and enforceable right to the relief sought, and that this essential requirement had not been established. We think this position is correct and, for the reasons above assigned, we are of the opinion that the exception of no right of action should have been separately considered and sustained. Accordingly, the judgment appealed from is annulled and set aside and there is now judgment in favor of defendants sustaining their exception of no right of action and dismissing plaintiff’s suit at his cost