906 So.2d 627 (2005)
Michael D. HAMILTON
v.
ROYAL INTERNATIONAL PETROLEUM CORPORATION and Elmer B. Litchfield, Sheriff & Tax Collector of the City of Baton Rouge.
No. 2003 CA 2660.
Court of Appeal of Louisiana, First Circuit.
March 2, 2005.
*629 Daniel J. McGlynn, Baton Rouge, Counsel for Plaintiff/Appellant Michael D. Hamilton.
Charles G. Blaize, Jr., Baton Rouge, Counsel for Defendant/Appellee Royal International Petroleum Company.
Leu Anne Lester Greco, Baton Rouge, Counsel for Defendant/Appellee Sheriff Elmer B. Litchfield.
Before: CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, HUGHES, and WELCH, JJ.
GUIDRY, J.
The primary issue in this suit to annul a tax sale is whether the tax collector was required to give a tax debtor the post-sale notice provided in La. R.S. 47:2180 A(1)(b), dealing primarily with the debtor's right of redemption, when the notice requirement was enacted after the sale, but before the expiration of the redemption period on the property. Concluding that notice was required under these circumstances, we reverse the judgment of the trial court refusing to annul the tax sale.

FACTS AND PROCEDURAL BACKGROUND
In 1994, plaintiff, Michael D. Hamilton, owned a residence in Baton Rouge, Louisiana, that he had inherited from his father and had lived in all his life.[1] A tax notice was sent to him for 1994 City/Parish taxes on the property, but the taxes were not paid. In April 1995, a notice of tax delinquency was sent to plaintiff, advising that the property would be seized and sold if the taxes were not paid within twenty days of the notice. Plaintiff signed a return receipt indicating receipt of the delinquency notice. After discussing the matter with someone at his mortgage company, plaintiff believed it was taken care of. However, the taxes remained unpaid, and the house was properly advertised for sale. On June 12, 1995, the property was sold at tax sale to defendant, Royal International Petroleum Corporation (Ripco) for $71.68, consisting of $27.09 in unpaid taxes, plus interest and costs. A tax deed on the property was executed in Ripco's name and recorded on June 30, 1995. Thereafter, Ripco paid all property taxes due on the property.
*630 At some point in 1998, Irion Bordelon, as agent for Ripco, telephoned plaintiff and informed him that Ripco had purchased his property at tax sale. There was a dispute at trial as to when this conversation occurred and as to whether Bordelon advised plaintiff of his right to redeem the property. In any event, the property was not redeemed within the three-year period allowed by law, which expired on June 30, 1998. In January 1999, Ripco sent plaintiff an invoice offering to convey the property to him by quitclaim deed for the sum of $2555.24. The offer was not accepted. On October 15, 1999, plaintiff filed the instant suit to annul the tax sale, naming as defendants Ripco and Elmer B. Litchfield, Sheriff and Tax Collector for the City of Baton Rouge. Following trial, the trial court rendered judgment in favor of defendants, dismissing plaintiff's suit to annul the tax sale, with prejudice, at plaintiff's costs.

ASSIGNMENTS OF ERROR
1. The trial court erred in not finding that the tax sale to Ripco was null and void due to the tax collector's failure to give notice of the right of redemption to plaintiff as required by La. R.S. 47:2180 A(1)(b).
2. Alternatively, the trial court erred in not finding that the tax sale and procedures relating thereto violated the Due Process clauses of the United States and Louisiana Constitutions.
3. Alternatively, the trial court erred in not finding that the tax sale and procedures relating thereto violated the Equal Protection clauses of the United States and Louisiana Constitutions.

DISCUSSION
La. Const. Art. VII, § 25(B)(1) provides that property sold at a tax sale is redeemable for three years after the date of recordation of the sale. On appeal, plaintiff argues the tax sale of his property should be annulled due to the tax collector's failure to give him written, post-sale notice of this right of redemption as required by La. R.S. 47:2180 A(1)(b). La. R.S. 47:2180 A provides as follows:
(1)(a) On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
(b) On the second day of January of each year, or as soon thereafter as possible, in each year following the year in which the original notice of delinquency is made pursuant to Subparagraph (a) herein, the tax collector shall address to each taxpayer who has not paid all the taxes which have been assessed to him on immovable property a written notice in the manner provided herein. The notice shall specify the property upon which the taxes are delinquent, the amount of taxes due, and the manner in which the property may be redeemed. The notice shall be made each year until the property is no longer redeemable as provided in Article VII, Section 25(B) of the Constitution of Louisiana.... (Emphasis added).
Subparagraph A(1)(b) was not part of La. R.S. 47:2180 at the time of the 1995 tax sale at issue herein, but was added by Acts 1997, No. 984. This provision imposes a *631 mandatory duty upon the tax collector to provide a tax debtor with written, post-sale notice of the amount of taxes due and the manner in which his property may be redeemed. This notice is to be given in January of each year following the original notice of delinquency until the property is no longer redeemable. Prior to the 1997 amendment, the tax collector had no such statutory duty.
Act 984 did not provide a specific effective date or express any intent regarding either retroactive or prospective application of La. R.S. 47:2180 A(1)(b). Thus, it became effective on August 15, 1997, the general effective date for acts of the 1997 Regular Session. Accordingly, plaintiff contends he was entitled to the notice provided by La. R.S. 47:2180 A(1)(b) in 1998, even though the tax sale occurred in 1995, since the three-year redemption period for his property had not yet expired. In opposition, defendants argue La. R.S. 47:2180 A(1)(b) cannot be applied to tax sales that occurred prior to its enactment. They contend that doing so would be a retroactive application of the amended statute that would deprive Ripco of property rights that vested at the time of the 1995 tax sale. We disagree, concluding that application of La. R.S. 47:2180 A(1)(b) to the facts of the present case constitutes a prospective, rather than retroactive, application of the provision.
In Walls v. American Optical Corporation, 98-0455, p. 4 (La.9/8/99), 740 So.2d 1262, 1266, the Louisiana Supreme Court recognized the difficulty of determining whether a statute is operating retroactively when it is applied in a situation where some of the operative facts occurred before its enactment, while others occurred after its effective date. The United States Supreme Court discussed this issue in Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), stating as follows:
A statute does not operate "retrospectively"[2] merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. (Citations omitted). 511 U.S. at 269-70, 114 S.Ct. at 1499, 128 L.Ed.2d at 254. (Footnote added).
The Louisiana Supreme Court further explained that a law is not considered as operating retroactively unless it either: (1) evaluates the conditions of the legality of a past act, or (2) modifies or suppresses the effects of a right already acquired. Smith v. Board of Trustees of Louisiana State Employees' Retirement System, 02-2161, p. 8 (La.6/27/03), 851 So.2d 1100, 1106, cert. denied, 540 U.S. 1179, 124 S.Ct. 1414, 158 L.Ed.2d 81 (2004); Walls, 98-0455 at pp. 5-6, 740 So.2d at 1267.
Neither of these situations is applicable in the instant case. First, in making a determination of whether there has been compliance with La. R.S. 47:2180 A(1)(b), the focus is not on the legality or manner in which the 1995 tax sale was conducted. Irrespective of whether the 1995 sale was properly conducted, the issue is whether there was adherence to the requirement that plaintiff be given the notice delineated in La. R.S. 47:2180 A(1)(b), which by its very terms is to be given after a tax sale. Thus, any deficiency in the proceedings that occurred in 1998 as a result of the tax collector's failure to give the post-sale notice occurred after the effective date of this provision. The fact that a subsequent *632 defect could ultimately result in annulment of the 1995 tax sale does not alter this crucial fact. Even when the operation of a statutory provision is unquestionably prospective, it may still "unsettle expectations and impose burdens on past conduct...." Landgraf, 511 U.S. at 270 n. 24, 114 S.Ct. at 1499 n. 24.
Moreover, we do not believe the application of La. R.S. 47:2180 A(1)(b) in the instant case operates to disturb, modify or suppress any acquired or vested rights of Ripco. The tax deed obtained by Ripco in 1995 conferred only a conditional or contingent title upon Ripco during the redemptive period, as opposed to a vested right. A "vested right" is one that is "absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit ... does not constitute a vested right." Smith, 02-2161 at p. 9, 851 So.2d at 1106. It is well established that the title acquired by a purchaser at a tax sale is an inchoate or contingent one during the period of redemption, since it is defeated by the exercise of that right. Kelso v. Caffery, 221 La. 1, 58 So.2d 402, 406 (1952); Mississippi Land Company v. S & A Properties II, Inc., 01-1623, pp. 3-4 (La.App. 3rd Cir.5/8/02), 817 So.2d 1200, 1203; Wells v. Joseph, 95 So.2d 843, 845-46 (La.App. 2nd Cir.1957), affirmed, 234 La. 780, 101 So.2d 667 (1958). Upon purchasing plaintiff's property, Ripco undoubtedly had an expectation that its conditional title might ripen into a perfect title upon expiration of the redemptive period, if the property were not redeemed. Nevertheless, since the law was changed during the redemptive period, while Ripco's rights were still inchoate, no vested or acquired rights were affected or impaired by the change.[3]
Under its plenary powers, the Legislature was free to add a new prerequisite to the proceedings leading to the final divesture of a tax debtor's property. The Legislature chose to do so by enacting La. R.S. 47:2180 A(1)(b), which mandates that tax debtors be given post-sale notice of their right of redemption each year until their property is no longer redeemable. This notice provision became effective in the interim between the 1995 tax sale of plaintiff's property and the expiration of the redemptive period thereon. As we have noted, we believe its application in the instant case is prospective, rather than retroactive. Accordingly, plaintiff was entitled to post-sale notice in January 1998, since the redemptive period on his property had not yet expired at that time.
Furthermore, we agree with plaintiff's contention that the tax collector's failure to give him the notice required by La. R.S. 47:2180 A(1)(b) entitled him to annulment *633 of the tax sale to Ripco. Under the terms of this provision, the duty of the tax collector to give post-sale notice each year until the property is no longer redeemable is mandatory. The apparent purpose of this notice requirement is to ensure that tax debtors are aware of their right to redeem their property, as well as to facilitate the exercise of that right, if a tax debtor so chooses. The tax collector's failure to perform its mandatory duty resulted in a fatal defect in the proceedings, since it deprived plaintiff of a valuable safeguard granted by the Legislature.
This conclusion is supported by the holding of United Financial Group, Inc. v. Davis, 481 So.2d 726 (La.App. 1st Cir.1985), which dealt with a tax collector's failure to give a required post-adjudication notice to two tax debtors whose property was adjudicated to the state for unpaid taxes. When property is adjudicated to the state, La. R.S. 47:2186 imposes a mandatory duty on the tax collector to immediately, or as soon as possible thereafter, notify the tax debtor in writing that the sheriff will take actual possession of the adjudicated property within thirty days. The required post-adjudication notice was never given. The property was subsequently offered at sheriff's sale and purchased by United Financial Group. When United filed suit to confirm title, the tax debtors responded by filing a petition to annul the tax adjudication to the state, based on the tax collector's failure to provide the post-adjudication notice mandated by La. R.S. 47:2186. The trial court rendered judgment in favor of the tax debtors. This Court affirmed, concluding the tax collector's failure to provide the required notice rendered the adjudication to the state a nullity. United, 481 So.2d at 728. In reaching this conclusion, the United court relied on the fact that the notice requirement was mandatory, stating that the Constitution tolerated "nothing less than strict compliance with the procedures involved in divesting someone of his property." United, 481 So.2d at 729. We believe this reasoning is likewise applicable herein, even though the post-adjudication notice at issue in United differed from the post-sale notice required by La. R.S. 47:2180 A(1)(B). This fact does not alter the fundamental premise of United that the failure to comply with a mandatory notice requirement is a fatal defect in the proceedings. In proceedings leading to the final divesture of a tax debtor's property, there must be strict adherence to the notice provisions mandated by law. United, 481 So.2d at 729; see also La. Atty. Gen. Op. No. 91-663 (1992) (failure to give post-adjudication notice, which is just as important as pre-sale notice of delinquency, renders the adjudication null and void).
In brief, Ripco argues United cannot serve as authority for annulling the tax sale in this case, because it is distinguishable in several respects. The primary distinction alleged is that the United holding was based on the fact that the tax debtors in that case, unlike the plaintiff herein, never received notice of delinquency and, therefore, were unaware of their delinquency status. However, contrary to Ripco's assertions, notice of delinquency was not an issue in that case, all parties having agreed that the required pre-sale notices were given. United, 481 So.2d at 727 n. 1. The holding of United was specifically based on the lack of post-adjudication notice, rather than pre-sale notice of delinquency, as alleged by Ripco. In further attempting to distinguish United, Ripco emphasizes it involved an adjudication to the state rather than a tax sale to a private investor. However, neither this fact nor any of the other distinctions advanced by Ripco alters our conclusion that the fundamental reasoning of United, that there must be strict compliance with all formalities *634 leading to the final divesture of a tax debtor's property, is equally applicable to the instant case.
Finally, Ripco contends the tax collector's failure to give plaintiff notice pursuant to La. R.S. 47:2180 A(1)(b) is not grounds for annulment in view of the fact that plaintiff was given actual notice of his right to redemption by Ripco's agent, Irion Bordelon. Although Ripco contends this fact is undisputed, the record does not support its claim. To the contrary, it indicates both the date of Bordelon's initial contact with plaintiff and the substance of their conversation were disputed at trial. Plaintiff insisted the initial conversation occurred after the expiration of the redemptive period in June 1998, whereas Bordelon stated it took place in January 1998. Furthermore, while plaintiff admitted Bordelon told him about the tax sale, he denied knowing he had a right to redeem his property. According to plaintiff, Bordelon merely told him he could buy his property back from Ripco for $2,500, which plaintiff could not afford to do. Plaintiff claims this sum exceeded by $1000 what the actual cost of redemption would have been at that point.
In opposition to plaintiff's testimony, Bordelon initially testified that he informed plaintiff he could redeem his property by going to the sheriff's office. Under cross-examination, however, Bordelon admitted he could not specifically remember telling plaintiff that he could redeem the property through the sheriff's office, but was basing his testimony on notes he made of the conversation. Moreover, he conceded these notes did not specifically mention anything about telling plaintiff about his right to redemption. Bordelon explained his earlier testimony by saying he may have just "assumed" plaintiff would go to the sheriff's office to inquire about his property upon being told his house had been sold for taxes.
Under the circumstances, we cannot agree that the record establishes plaintiff received post-sale notice from Bordelon adequate to meet the requirements of La. R.S. 47:2180 A(1)(b), even assuming for the sake of argument that verbal notice from a tax purchaser can satisfy the tax collector's duty to give written notice.[4] While it is clear that Bordelon informed plaintiff that his property had been sold at tax sale, La. R.S. 47:2180 A(1)(b) requires more than mere notice that a tax sale has occurred. It also requires that a tax debtor be notified of the amount of taxes due on his property and the manner in which the property can be redeemed. Bordelon did not even claim to have told plaintiff the amount of taxes he owed. Moreover, considering the entirety of the testimony, the record does not adequately reflect that plaintiff was given notice of his right of redemption in this case.[5]

CONCLUSION
For the reasons assigned, we find there should be judgment in favor of plaintiff *635 annulling the tax sale at issue herein.[6] Accordingly, we reverse the judgment of the trial court dismissing plaintiff's suit, and hereby render judgment in favor of plaintiff and against defendants, decreeing that the tax sale made to Royal International Petroleum Corporation on June 12, 1995, by the Sheriff and Tax Collector for the Parish of East Baton Rouge, and recorded on June 30, 1995, covering the property described as: Lot 12 Sq. 7 Roseland Terrace, 40 Ft., N. side Cherokee St. x 120 Ft. Land, 1000 Imp. 1790. 1982 (P-40, 988), E. 10 Ft. Lot 13 Sq. 7 Roseland Terrace, 10 Ft. N. side Cherokee x 120 Ft. Land 250, is hereby annulled and ordered cancelled from the records in the Office of the Clerk and Recorder for the Parish of East Baton Rouge, said annulment to be effective upon payment by plaintiff to defendant, Royal International Petroleum Corporation, of the amount due under La. Const. Art. VII, § 25(C), consisting of the purchase price, all taxes and costs, and ten percent (10%) per annum interest on the amount of the price and taxes paid from the date of respective payments, or in the event of refusal of said defendant to accept this amount, upon the deposit by plaintiff of the amount due and owed to said defendant in the Registry of the Nineteenth Judicial District Court for the Parish of East Baton Rouge. The costs of this appeal, in the amount of $891.59, are to be shared equally by defendants.
REVERSED AND RENDERED.
PETTIGREW, J., dissents for the reasons assigned by Judge GAIDRY.
GAIDRY, J., dissents and assigns reasons.
CARTER and McDONALD, JJ., concur.
PARRO and KUHN, JJ., dissent.
GAIDRY, J., dissenting.
I must respectfully disagree with the majority's retroactive application of the 1997 amendment creating La. R.S. 47:2180(A)(1)(b). In the first place, I disagree with the majority's conclusion that Ripco did not acquire a vested property right through the tax sale at issue; regardless of the inchoate or incomplete nature of the property "title," the property right acquired by Ripco is clearly a "significant property interest" of which it may not be divested without due process. See Fuentes v. Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). Secondly, I disagree that this court's holding in United Financial Group, Inc. v. Davis, 481 So.2d 726 (La.App. 1st Cir.1985), is fairly comparable or analogous to the result reached herein. Lastly, from a practical standpoint, the majority's holding will create unnecessary confusion in property title examinations and unwarranted administrative burdens on the tax collectors of this state. That the notice requirements of the applicable statute were no doubt improved by the 1997 amendment does not mean they-were defective before its effective date.
Certainly, the relatively insubstantial monetary amount of unpaid taxes and Mr. Hamilton's lifelong residency in his family home make this a harsh case from an equitable standpoint. But those circumstances are irrelevant since the existence *636 of positive law precludes equity as the determining criterion here; good intentions often make for bad law. I am fully in sympathy with Mr. Hamilton's plight, but there is no question that he received the notice due under the prevailing statute, that he was not deprived of due process, and that the result reached by the trial court was fully supported by the facts and in accord with the law which governs this dispute. Under these circumstances, the judgment should be affirmed. I respectfully dissent.
NOTES
[1] The property was described in the tax notice as follows:

Lot 12 Sq. 7 Roseland Terrace, 40 Ft., N. side Cherokee St. × 120 Ft. Land, 1000 Imp. 1790. 1982 (P-40, 988), E. 10 Ft. Lot 13 Sq. 7 Roseland Terrace, 10 Ft. N. side Cherokee × 120 Ft. Land 250.
[2] The Supreme Court specifically noted that the terms "retroactive" and "`retrospective" are synonymous in judicial usage. Landgraf, 511 U.S. at 269, 114 S.Ct. at 1499.
[3] A somewhat analogous situation occurred in Smith, 02-2161 at pp. 8-12, 851 So.2d at 1106-1110, which involved numerous employees who retired from and were then rehired by the Louisiana Department of Public Safety and Corrections under a law that allowed a retiree to receive both his salary and full retirement benefits, as well as other benefits, if he was retired for at least twelve months before being rehired. If a retiree was rehired sooner than twelve months, his retirement benefits were suspended until that period had expired, i.e., the waiting period. However, prior to any of the retirees completing the waiting period, the Legislature changed the law to require the retirees to select one of four options, none of which afforded them all of the benefits offered at the time they were rehired. The retirees filed a suit for declaratory judgment arguing the new law was unconstitutional because it retroactively deprived them of the reemployment benefits in effect at the time they retired and were rehired. The Louisiana Supreme Court rejected this argument, holding that because the reemployment benefits were modified prior to the expiration of the twelve-month waiting period, the law did not operate retroactively, and affected only inchoate, rather than vested, rights of the retirees.
[4] We note that La. R.S. 47:2180 B requires the written notice to be sent by certified mail, with return receipt requested, except that in cities with populations over 50,000, the tax collector also has the option of making personal or domiciliary service on the tax debtor. Further, after completing the mailing or service of notice, the tax collector is required to prepare an official proces verbal stating how notice was given to each tax delinquent. These requirements indicate the importance the Legislature places on the notices that must be given to tax debtors.
[5] In view of our conclusion that the tax sale must be annulled due to lack of post-sale notice, we pretermit consideration of the remaining assignments of error asserted by plaintiff.
[6] At oral arguments, counsel for defendant, Sheriff Elmer Litchfield, requested that, in the event we conclude the tax sale must be nullified, we declare the nullity to be relative in nature rather than absolute. However, we decline to consider this issue, because such a determination is not necessary to the ultimate resolution of this matter and would merely constitute non-binding dicta. Cf. State v. Brooks, 99-1441, p. 1 (La.11/24/99), 765 So.2d 993.