61 So.2d 466 (1952)
ARMSTRONG
v.
BATES.
No. 3595.
Court of Appeal of Louisiana, First Circuit.
November 14, 1952.
*468 Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for appellant.
Benton & Moseley, Baton Rouge, for appellee.
ELLIS, Judge.
Plaintiff filed this suit on February 15, 1950 in which she prays to be decreed null, void and of no effect the document executed by her on June 13, 1948 which is as follows:
"State of Louisiana Parish of East Baton Rouge
"Know all men by these presents, that I, Mrs. Maude Bates Armstrong, widow of C. W. Armstrong, have this day released, relinquished, quitclaimed, bargained, sold and delivered, for good and valuable consideration, to Mrs. Mable Jones Bates, widow of Joseph W. Bates, and his universal legatee, all of my right, title, and interest in and to the following described property, including any right of redemption from the State:
"190 acres, from 740 acre tract, bounded North by Dally, East and South by Roberts and Comite River, West by Brogden, situated in the Parish of East Baton Rouge, adjudicated to the State of Louisiana for unpaid taxes of the year 1937 in the name of Heirs of J. W. and Mrs. L. M. Bates.
"My interest in said property was acquired as one of the legal heirs of J. W. and Mrs. L. M. Bates, who were my father and mother.
"As a further consideration of this transfer, the said Mrs. Mable Jones Bates agrees to redeem the said property from the State of Louisiana, and to pay all the taxes necessary to effect such redemption.
"Thus done and signed at Baton Rouge, Louisiana, on this the 13th day of June, 1948.
"Witnesses:
 (s) Mrs. Jos. Gregg, Jr.
 (s) Mrs. Walter Blair
 (s) Mrs. Maude Bates Armstrong
 (Mrs Maude Bates Armstrong.)
 (s) Mable J. Bates
 (Mrs. Mable Jones Bates)
"State of Louisiana
Parish of East Baton Rouge
"Before me, personally came and appeared Mrs. Jos. Gregg, Jr., who deposed that she was one of the subscribing witnesses and that the foregoing quitclaim was accomplished and subscribed to in her presence.
"Thus done and signed at Baton Rouge, Louisiana, on this 15th day of August, 1949.
 "(s) John R. Jones
 Notary Public
 "(s) Mrs. Jos. Gregg, Jr."
The plaintiff has attacked the instrument on the ground that it has no validity as a donation since it is not in the proper form and that it does not constitute a sale as there was no consideration. Plaintiff in the alternative further contended that in the event this document should be held to have validly transferred plaintiff's interest then it was her intention to transfer only the 1/10 interest in the described property which she had acquired as one of the ten heirs of J. W. and Mrs. L. M. Bates, her father and mother, and she prayed for such a judgment.
The defendant filed an exception of no cause or right of action which was referred to the merits but is not being urged on appeal. Defendant also filed a plea of estoppel *469 "for the reason that plaintiff signed said document deliberately after giving full consideration to the matter and thereby caused defendant to incur onerous obligations and expend substantial sums of money, time and effort in consequence thereof."
Defendant's answer which constituted a general denial, in the alternative and in the event the court should find the instrument to be null and void, then prayed that there be judgment rendered in favor of plaintiff in reconvention and against the defendant in reconvention to the extent of defendant in reconvention's pro rata share of the cost of redemption of the property from the state of Louisiana, together with the pro rata share of taxes and interest paid thereon, as well as interest at the legal rate from the date of redemption on sums paid by plaintiff in reconvention.
After the trial the District Judge sustained the plea of estoppel and rendered judgment in favor of the defendant, rejecting plaintiff's demands, from which judgment the plaintiff has appealed.
The facts leading up to the execution of the instrument in question are not in dispute and are substantially as follows:
The plaintiff, Mrs. Maude Bates Armstrong, was one of ten children of Mr. J. W. and Mrs. L. M. Bates, who, at the time of their death, left an undivided interest in approximately 190 acres of land. It appears that this 190 acres was part of a 740 acre tract in which J. W. Bates originally acquired a one-half interest with a man named Blouin. Portions of the land were sold and the 190 acres is really owned in indivision by the Blouin heirs and the Bates heirs, however, the undivided interest in the property left from the 740 acres equals approximately 190 acres, and the Bates heirs were assessed with this amount of land and in 1937 they failed to pay the taxes due on their interest, being this 190 acres above mentioned, and as a consequence this acreage was adjudicated to the State of Louisiana on July 2, 1938.
In May of 1948 T. Y. Powell made application for a homestead entry and the property designated was the 190 acre tract.
It is also shown by the record that the plaintiff in addition to the 1/10th interest inherited from her father and mother acquired an additional 1/10th interest from her sister, Mrs. Bertie Bates Hurst, and inherited what amounted to a 1/7th of 3/10th interest from a sister and two brothers who died.
The defendant learned of the attempt to homestead the property from the state and took the matter up with the plaintiff and other Bates heirs in an endeavor to get each one to put up his pro rata share necessary to redeem the property. None of the heirs desired to join the defendant in the redemption of the property and the defendant then acquired the interest of most of the heirs by the same kind of instrument as that which the plaintiff executed, supra.
The defendant was pressed for time after learning of Powell's application for homestead, and the day after obtaining the instrument signed by the plaintiff herein went to the bank and borrowed the necessary amount and redeemed the property for $719.23.
It is further shown that in addition to the initial cost of $719.23 necessary to redeem the property, the interest being an undivided one, it would be necessary to obtain legal services in order to clear the title.
The record further reveals that 26 acres of this 190 acres was separately assessed to the plaintiff and she paid taxes thereon from 1917 through 1949 with the exception of the years 1932 through 1936 when the 26 acre tract so assessed was adjudicated to the State, and that in 1937 the 26 acres was redeemed by the plaintiff, Mrs. Armstrong, from the State of Louisiana. There is no accurate description in the record of this 26 acres or explanation of why it was assessed separately to the plaintiff, neither is there an accurate description of the 190 acres.
The instrument in question in this case is what is commonly referred to as a quitclaim deed, similar to the one involved in the case of Waterman v. Tidewater Associated Oil Company, 213 La. *470 588, 35 So.2d 225, 230 and which the Supreme Court said:
"The deed recites in substance that the party of the first part has `remised, released, sold, conveyed, and quitclaimed, and by these presents does remise, release, sell, convey and Quit Claim * * * all the right, title, interest, claim and demand which said party of the first part has in and to the following described piece of land * * *.' Obviously, the declarations do not convey the land but only the right, title and interest of the vendor. It is in the nature of an assignment of a right or an interest and as such falls squarely within the category of the common law quitclaim deed. Examination of our Civil Code discloses the absence of provisions relative to quitclaim deeds. The articles on sales of property and the obligations and rights resulting therefrom do not mention quitclaim deeds; Articles 2500 through 2504 respecting the warranty of the seller being confined to treatment of sales with warranty, express and implied, and those where warranty is specifically excluded. On the other hand, quitclaim deeds are fully recognized in the jurisprudence and have many times been considered by our courts. 26 C.J.S., verbo, Deeds, § 8, page 181, defines a quitclaim deed as follows:
"`A quitclaim deed is one which purports to convey, and is understood to convey, nothing more than the interest or estate in the property described of which the grantor is seized or possessed, if any, at the time, rather than the property itself.'
"The authorities from the Federal courts and the courts of other states are that, in determining whether a deed is a quitclaim or not, reference must be made to the language used therein for the purpose of ascertaining the intention of the parties. Williams v. Rabb, Tex.Civ.App., 161 S.W.2d 121. The fact that the deed is denominated a quitclaim is not conclusive (Wise v. Watts, Ariz., 239 F. 207, 152 C.C.A. 195; Cook v. Smith, 107 Tex. 119, 175 [174] S.W. 1094, 3 A.L.R. 940), nor does the fact that the words `bargain and sell' are used necessarily imply that the grantor is absolute owner and that he is not merely quitclaiming his right, title and interest. Brown v. Harvey Coal Corporation, D.C.E.D. Ky., 49 F.2d 434; Young v. Clippinger, 14 Kan. 148. Examination must be had of all of the recitals contained therein in an effort to resolve the true intent. Here, we think, as above stated, that the recitals are clear and show merely a transfer of the interest of Rectangle in two townships and do not convey any property.
"On the other hand, the title to real property may be as effectually transferred by quitclaim as by any other form of conveyance. But such a deed conveys only such title or interest that the grantor had at the time it is given `and excludes any implication that he has any title or interest.' 26 C.J.S., Deeds, § 118, page 415. Nevertheless, it is established in Louisiana that a quitclaim deed is sufficient to support the ten year acquisitive prescription provided by Article 3478 of the [LSA-] Civil Code. See Smith v. Southern Kraft Corp., 202 La. 1019, 13 So.2d 335 and cases there cited."
There is no contention that the quitclaim deed has any validity as a donation, but the defendant again strongly urges its plea of estoppel which was sustained in the lower court under and by authority of Gary v. Bullock, 206 La. 231, 19 So.2d 120, 122. In that case the "quitclaim or release deed" read as follows:
"Know All Men by These Presents:
"That Whereas, Clyde Delahoussaye, and Albert Decuir both residents of Iberia Parish, and State of Louisiana, did on or about June 23, 1929, purchase from the Sheriff of Iberia Parish, Louisiana, at a tax sale an undivided interest in the following described properties, to-wit:
"A certain tract of land containing forty four and 6/10 (44.6) acres of land and being bounded on the North by Dr. George J. Sabatier, Walter J. *471 Burk, S. E. Sorrelle, and others; South by Bayou Teche; West by F. N. Bullock; and East by F. N. Bullock, being situated in Township Twelve (12) South, Range Seven (7) East, Iberia Parish, Louisiana.
"Whereas, the said interest that was purchased at said tax sale was an undivided interest owned by the heirs of Hermine Olivier and that said tax sale did not affect the other undivided interest in said property.
"Whereas, F. N. Bullock is now the legal and rightful owner of the other undivided interest in said property.
"Now, therefore, the said purchasers of the said land at the said tax sale having no claims and no interest conveyed to them by said tax sale of the interest so owned by said F. N. Bullock, this act is executed by said purchasers for the purpose of releasing, relinquishing, quit-claiming, and waiving all or any interest that they might have acquired in saiv Bullock's interest by any error in said tax sale above referred to."
One of the attacks made upon the abovequoted quitclaim deed in the cited case was a lack of consideration, which is the main attack made as to the nullity of the quitclaim deed in the case at bar. However, in Gary v. Bullock, supra, the Supreme Court considered the quitclaim deed as a disclaimer of any interest in the property in question and recognition of the ownership set forth in that quitclaim deed. This is clearly shown by the following statement in the opinion:
"It is not suggested or urged by defendants that the assailed quitclaim deed vested any title in them. But they do insist that the recognition of their ownership to the disputed interest by Clyde Delahoussaye and Albert Decuir, solemnly and expressly declared in that instrument, cannot now be contested or repudiated by those signers or denied by the plaintiffs who claim through them."
The Supreme Court, after citing and quoting from 31 C.J.S., Estoppel, §§ 36, 37; LSA-Civil Code, Article 2236, Beltran v. Leche, 50 La.Ann. 385, 23 So. 203, 204; Watson v. Succession of Barber, 105 La. 456, 29 So. 949; Karcher v. Karcher, 138 La. 288, 70 So. 228; Burns v. Rivero, 192 La. 767, 189 So. 129; Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633; 31 C.J.S., Estoppel, §§ 123, 125, stated:
"In view of the foregoing authorities and of the fact that the quitclaim deed in question was authentic in form and duly and timely recorded it is clear that these plaintiffs, who claim through the signers of the instrument, are forever estopped to dispute defendants' ownership, unless the evidence discloses fraud or forgery or lack of consideration in the confection of that deed."
The quitclaim deed in the case at bar must have been supported by some consideration as it purports to transfer and sell an interest of the plaintiff in real estate. It is true that it does not transfer the property, as title was in the state at the time, but such a deed must be supported by a consideration.
In the Gary v. Bullock case, the Supreme Court found as a matter of fact that that quitclaim and disclaimer deed was supported by an adequate consideration. The plea of estoppel should have been overruled as plaintiff was not estopped to attack this quitclaim deed on the grounds of no consideration.
This brings us down to the question of whether the quitclaim deed was supported by an adequate consideration. It is admitted that there was no cash consideration paid but it is contended by the defendant that redemption by a co-owner inures to the benefit of all the other co-owners, who have the right within a reasonable time to pay their pro rata share and reacquire their interest, or quitclaim their interest in consideration of the money paid by the redeeming co-owner on their behalf, and that in the present case the plaintiff chose neither to redeem nor to pay her pro rata share upon the redemption of the property and, therefore, this deed is supported by sufficient consideration. We agree with this contention, and the fact that the plaintiff *472 filed and executed the quitclaim deed one day prior to the redemption of the property by the defendant is immaterial. As a further consideration, it is shown that the property was owned in indivision and there would be additional costs necessary in order to clear the title, and by the execution of the quitclaim deed the plaintiff was relieved of this burden. There is no contention of any fraud or error in the execution or filing of this quitclaim deed itself.
We next come to the question of the interest transferred under the terms of this quitclaim deed. It is contended by the plaintiff that she only intended to convey the 1/10th interest which she inherited from her father and mother and not the interest purchased from her sister and inherited from her sister and two brothers, and that in any event the judgment of the court should limit or fix the interest being transferred to 1/10th. As to this contention the quitclaim deed states "* * * all of my right, title and interest * * *", and after a description of the property we find the following: "My interest in said property was acquired as one of the legal heirs of J. W. and Mrs. L. M. Bates, who were my father and mother." It is to be noted that the plaintiff in the quitclaim deed solemnly declares that she "released, relinquished, quitclaimed, bargained, sold and delivered" unto the defendant all of her right, title and interest. The word "all" as used is comprehensive. It stands to reason that defendant would not care to have a quitclaim deed unless it included all of plaintiff's interest in the property, notwithstanding the phrase, "My interest in said property was acquired as one of the legal heirs of J. W. and Mrs. L. M. Bates". It is our opinion that the latter phrase in no wise limits the meaning of the word all, but was inserted merely for the purpose of title information.
The plaintiff in her testimony is positive that she intended to convey only the 1/10th interest which she had individually inherited from her father and mother, while the defendant is likewise positive that she was acquiring all of plaintiff's interest in the property. Since the quitclaim deed is in the nature of a sale, the rules governing the interpretation of a sale should apply. A vendor desiring to reserve or limit a sale must make such reservation or limitation in the act. The plaintiff, not having clearly and concisely limited the purported transfer of her right or interest to an undivided 1/10th in the property must be held to have intended to and did transfer all, whatever it may have been, of her rights or interest in the said property.
It was stipulated between counsel for plaintiff and defendant "that as to twenty-six acres of this 190 acre tract there was a dual assessment, the 26 acres being assessed to Mrs. Maude Bates Armstrong, and on which taxes were paid from the year 1917 through 1949 with the exception of the years 1932 through 1936 when the 26 acres so assessed were adjudicated to the State and that in 1937 the said 26 acres were redeemed by Mrs. Armstrong from the state of Louisiana. That the taxes for the year 1949 on this 26 acres have been paid by Mrs. Maude Bates Armstrong and amount to the sum of $7.81, and in connection with this stipulation offer, produce and file in evidence tax receipt signed by Bryan Clemmons, Sheriff and Ex-Officio Tax Collector, showing payment for the year 1949 and ask that same be marked P-2. In connection with the redemption of 1937 by Mrs. Armstrong, it is stipulated that the instrument recorded in Conveyance Book 383, folio 249, of the official records of the Parish of East Baton Rouge, being a record of tax redemption Number J-508 is the same and a true and correct statement of the tax redemption by Mrs. Armstrong."
Clearly there was a dual assessment as to 26 acres and the tax sale thereof to the State was an absolute nullity and it could not be considered as having been redeemed by the defendant as the State had no title. This 26 acres should be excluded from any judgment in favor of the defendant. Kelso v. Caffery, 221 La. 1, 58 So.2d 402. As to the quitclaim deed, it is null and void insofar as it purported to transfer plaintiff's interest in the 26 acres for the additional reason that the plaintiff did not receive any consideration for the transfer of her interest in this 26 acres.
*473 It is therefore ordered, adjudged and decreed that there be judgment in favor of the plaintiff and against the defendant annulling and setting aside the quitclaim deed insofar as it purports to transfer the 26 acres upon which there was a dual assessment.
It is further ordered, adjudged and decreed that in all other respects the judgment be affirmed, the appellant to pay all costs.
DORÉ, Judge (dissenting).
I favor an affirmance of the judgment. The document is a quitclaim deed as known in our jurisprudence. Such a deed is in the nature of a sale and consideration, regardless of how slight, must be proven. In this case a consideration was shown; the defendant has shown an outlay of $719.23, of which plaintiff necessarily owed a part thereof; by the quitclaim deed, she was relieved from paying her share; as a further consideration, defendant bound herself to redeem the property; this could have been enforced by plaintiff, and in the event of failure to do so, the defendant was subject to damages.
As to the interest which plaintiff quitclaimed unto defendant, it is to be noted that the plaintiff, in the quitclaim deed, solemnly declares that sets unto the defendant all of her right, title and interest. The word all as used is comprehensive. It stands to reason that defendant would not care to have a quitclaim deed unless it included all of plaintiff's interest in the property, notwithstanding the phrase "My interest in said property was acquired as one of the legal heirs of J. W. and Mrs. L. M. Bates". It is my opinion that the latter phrase in no wise limits the meaning of the word all. In my opinion, this phrase was inserted for the purpose of information as to how the plaintiff was claiming any interest in the property. There is a conflict between the testimony of plaintiff and defendant as to what interest was intended to pass by the deed.
The plaintiff in her testimony is positive that she intended to convey only the 1/10th interest which she had individually inherited from her father and mother, while the defendant is likewise positive that she was acquiring all of plaintiff's interest in the property. Since the quitclaim deed is in the nature of a sale, it is my opinion that the rules governing the interpretation of a sale should apply. It is a well-established fact in our jurisprudence that any ambiguity contained in a sale must be interpreted against the vendor; if the vendor desires to reserve or limit the sale he must make such reservation or limitation in the act. The plaintiff, not having clearly and concisely limited the purported transfer of her right or interest to an undivided 1/10th, in the property, must be held to have intended to and did transfer all, whatever it may have been, of her rights or interest in the said property. Furthermore, what strikes me forcibly is that it stands to reason that defendant would not have accepted or have taken the deed unless it covered all of plaintiff's right or interest in the property.
With reference to the 26 acres upon which it is claimed that plaintiff had been paying taxes, I am of the opinion that it does not enter into the merits of this case, for the reason, that the record is bare of any description of the 26 acres, and would involve the discussion of the legality of the tax sales of the properties. However, conceding that it has some bearing upon the issues involved herein, then I say that since the 26 acres are admitted to be a part of the 190 acres involved in this litigation the quitclaim deed likewise transferred such interest unto defendant for the same reason that the plaintiff is foreclosed to contend that she only transferred an undivided 1/10th interest.
It is my opinion that we are not concerned in this case with the validity of the tax sale of the 190 acre tract for the unpaid taxes of the year 1937, nor the effect of the assessment to and the payment of taxes by defendant on 26 acres of the 190 acres. The tax sale of the 190 acres had to be redeemed from the State, otherwise the heirs of J. W. and Mrs. L. M. Bates stood to lose any rights they may have had.
I respectfully dissent.