432 So.2d 1047 (1983)
SABINE PRODUCTION COMPANY, et al.
v.
GUARANTY BANK & TRUST COMPANY, as Trustee and J.N. Shilling, as Trustee.
The CHRISTINE MAE SHILLING INTER VIVOS TRUST NO. 1, et al.
v.
SABINE PRODUCTION COMPANY, et al.
Nos. 82 CA 0603, 82 CA 0604.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
*1048 Victor Roy, James E. Kuhn, Michael A. Patterson, Paul S. West, Baton Rouge, for plaintiff-appellant, Shilling Trust.
Lawrence P. Simon, Jr., Thomas M. McNamara, Lafayette, for plaintiff-appellee, Sabine Prod. Co.
Joseph V. Ferguson, II, New Orleans, for exceptor-appellee, Philip Vasser.
Peter R. Monrose, New Orleans, for defendant-appellee, Exchange Oil & Gas.
Kenneth J. Berke, New Orleans, for defendant-appellee, C.T. Carden.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
This is an appeal from a trial court judgment which granted certain motions for summary judgment filed in these consolidated suits.[1] The trial judge, in his written reasons, aptly expressed the pertinent background information involved herein. We therefore adopt his factual summary as our own:
"1. Plaintiffs filed this action seeking a judicial declaration of the invalidity of a certain donation dated March 3, 1972 from Eddie and Ruby McCartney Shilling to their son, J.N. Shilling. Plaintiffs claim that the donation in question is an absolute nullity and pray that this Court decree the invalidity of the donation and *1049 all rights deriving therefrom. Specifically at issue is the validity of an oil, gas and mineral lease granted by J.N. Shilling on February 1, 1976 to C.T. Carden, predecessor in title to Defendants, Sabine Production Company, Amoco Production Company, Exchange Oil & Gas Company, J.P. Robbins, III, and Charles M. Meeks (hereinafter `the Carden lease'), and a royalty deed dated June 29, 1979 executed by J.N. Shilling in favor of Philip W. Vasser.
2. In furtherance of their claim, the Plaintiffs filed a Motion for Partial Summary Judgment asking this Court to declare that the donation dated March 3, 1972 from Eddie and Ruby Shilling to J.N. Shilling is an absolute nullity and to declare the invalidity of the donation and all rights deriving therefrom. Defendants, C.T. Carden, Sabine Production Company, Amoco Production Company, J.P. Robbins, III, Charles Meeks, and Exchange Oil & Gas Corporation, filed oppositions to the Plaintiffs' Motion for Partial Summary Judgment, and in addition, filed motions for summary judgment asking the Court to declare the Carden lease to be a valid and binding lease. Similarly, Defendant, Philip W. Vasser, filed a motion for summary judgment to confirm his title to the royalty deed previously described.
3. The record establishes that the following documents, all duly recorded in the Conveyance Records of Livingston Parish, affect the property that is the subject of this dispute:
On March 3, 1972, Eddie and Ruby McCartney Shilling (hereinafter collectively `Eddie Shilling') donated the land in question to their son, J.N. Shilling.
On March 4, 1975, J.N. Shilling executed a cash sale of the property to the Livingston Savings & Loan Association, and on that same date the Livingston Savings & Loan Association resold the property to J.N. Shilling.
On February 1, 1976, J.N. Shilling executed an oil, gas and mineral lease in favor of C.T. Carden. Through various assignments, the validity of which are not contested in this lawsuit, Sabine Production Company (hereinafter sometimes `Sabine'), Amoco Production Company (hereinafter sometimes `Amoco'), and Exchange Oil & Gas Corporation (hereinafter sometimes `Exchange'), became and are now the owners of the working interest of the Carden lease. C.T. Carden, J.P. Robbins, III, Charles M. Meeks and others claiming under their titles presently own overriding royalty interests in the Carden lease.
On January 14, 1977, J.N. Shilling mortgaged the property in question to Ford Motor Credit Corporation. In conjunction with that mortgage, Ford Motor Credit required Eddie and Ruby McCartney Shilling to execute an `Act of Joinder,' which instrument first references the Act of Cash Sale dated March 4, 1975 by which J.N. Shilling sold the property in question to the Livingston Savings & Loan Association and then provides:
For good and valuable consideration, the sufficiency of which is acknowledged, Eddie Shilling and Ruby McCartney Shilling hereby join in said transfer as fully as though they had appeared in said act.
On June 29, 1979, J.N. Shilling executed a royalty deed in favor of P.W. Vasser."
The property in dispute, consisting of approximately 29.7 acres, is located in Livingston Parish, Louisiana, and is described as follows:
"A certain tract or parcel of ground, containing 29.7 acres, more or less, together with all the buildings and improvements thereon, situated in the Parish of Livingston, Louisiana, in Section 43, T-6-S, R-3-E, Greensburg Land District of Louisiana, and being more particularly described as follows, to-wit: From the Northeast corner of said Section 43, proceed South 9.62 chains and South 89° 30' West 31.18 chains to point and corner; thence North 9.62 chains to point and corner; thence North 89° 30' East 31.18 chains and corner; thence South 9.62 chains back to point of beginning. LESS AND EXCEPT *1050 THEREFROM, one (1) acre of land sold by J.W. Fleniken to J.T. Modlin out of the Southwest corner of the above described tract and a right of way 25 feet in width across the entire southern boundary of said tract."
The trial judge denied another motion for summary judgment[2] and found that the act of joinder executed by Eddie and Ruby Shilling cured any previous title deficiency and vested title to the property in J.N. Shilling. He further stated:
"6. Even assuming that J.N. Shilling had no interest in the property on the date of the original sale to the savings and loan on March 4, 1975, by virtue of Eddie Shilling's execution of the Act of Joinder, the property was sold and transferred from Eddie Shilling to the Livingston Savings & Loan Association to J.N. Shilling through operation of the after-acquired title doctrine. Alternatively, the Act of Joinder constituted a ratification by Eddie Shilling of J.N. Shilling's title to the property and the transfer of the property from J.N. Shilling to the Livingston Savings & Loan Association."
The trial judge held the after-acquired title doctrine mandated that the 1976 Carden lease, from which Sabine, Amoco, and Exchange derived their rights, be declared valid and binding, and also that Vasser's royalty deed be declared valid. Vasser's claim was further supported by the fact that he acquired his deed after the act of joinder had been recorded, and that he purchased in good faith relying on the public records. Thus, having determined there was no genuine issue of material fact, the trial judge granted defendants' motions for summary judgment. From judgment dated April 22, 1982, plaintiffs perfected this appeal.
This appeal essentially presents two issues:
1. Was the trial judge correct in concluding that there was no genuine issue of material fact as to the effect of the act of joinder, executed on January 14, 1977?
2. Was the trial judge correct in concluding that there was no genuine issue of material fact as to the applicability of the after-acquired title doctrine to the "resale" by Livingston Savings and Loan, dated March 4, 1975?
ISSUE NO. 1
The act of joinder, dated January 14, 1977, was signed by Eddie and Ruby Shilling, executed before a notary public, and signed by two witnesses. The instrument first identifies the sale to the Livingston Savings and Loan by J.N. Shilling, dated March 4, 1975, and then states that the consideration for that sale was the sum of $25,000.00. The deed also recites:
"For good and valuable consideration, the sufficiency of which is acknowledged, Eddie Shilling and Ruby McCartney Shilling hereby join in said transfer as fully as though they had appeared in said act." [Emphasis ours.]
The instrument was recorded in the public records of Livingston Parish on February 16, 1977. On its face, the deed manifests the intent of Eddie and Ruby Shilling to convey all their rights in the disputed property to Livingston Savings and Loan, as evidenced by the language, "as fully as though they had appeared in said act." This language expresses their intent to join their son in his sale of the property, as fully as if they had joined as vendors in the original conveyance on March 4, 1975.[3] It matters not that the act of joinder does not meet the formal requirements of a new donation,[4] as plaintiffs suggest. The deed does not purport to be a donation. Rather, it is a conveyance of the immovable property, made in writing, and for valuable consideration. *1051 See: La.C.C. arts. 2439, 2440, 2275. Therefore, we agree with the trial judge that it was sufficient to have conveyed the title to Livingston Savings and Loan, free and clear from any defects resulting from the alleged previous invalid donation.
ISSUE NO. 2
The second issue involves the applicability of the after-acquired title doctrine[5] to the "resale" by Livingston Savings and Loan to J.N. Shilling on March 4, 1975. Once Livingston Savings and Loan acquired title to the tract, then under the doctrine, title would automatically be vested in J.N. Shilling as its former vendee. Plaintiffs maintain that under Ruffino v. Hunt, 234 La. 91, 99 So.2d 34 (1958), the sale/resale transaction between J.N. Shilling and the Savings and Loan must be viewed as merely a device for creating a vendor's lien, and not as a "real" sale, with all the attendant risks of ownership. Plaintiffs also urge the sale by the Savings and Loan was by quit-claim deed, and thus, under Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225 (1947); and Freeman v. Turner, 373 So.2d 732 (La.App. 2nd Cir.1979), writ refused, 376 So.2d 320 (La.1979), the after-acquired title doctrine does not apply.
Defendants assert that under La.R.S. 6:833(D) and Hausler v. Nuccio, 214 La. 1069, 39 So.2d 734 (1949), the sale/resale is an actual sale creating a vendor's lien, and translating title. Further, they maintain that the deed was not a quitclaim, but rather was a sale without warranty of title, but with full subrogation, and thus the after-acquired title doctrine should apply.
At the time of these suits, La.R.S. 6:766[6] governed sale/resale transactions, and stated in part:
"This contract shall not be considered or dealt with as a loan, but as a purchase or acquisition by the association, and then as a sale by the association, to the member, and the association, to secure payment of the amount due by the member has a privilege of equal rank with a vendor of immovable property and enjoys for the protection of its claim and the enforcement of its loan all the rights, privileges, and securities which are now accorded by law to the vendor of the property." [Emphasis ours.]
In Hausler v. Nuccio, supra, the defendant-seller sold his property to the Pelican Homestead Association, which then resold the land to the plaintiff-buyer. Plaintiff subsequently discovered an outstanding title, and filed suit against the seller and Pelican seeking to rescind the sale. In Hausler, the Louisiana Supreme Court stated:
"The association's contention that the transaction whereby it purchased this property from Nuccio and resold it to the plaintiff was not a sale of the property, but, instead, a loan, is untenable.... this court, in the case of Mayre v. Pierson, 171 La. 1077, 133 So. 163, 165, declared that `the sale and resale to and from a building and loan association quoad the parties to the transaction, or to parties claiming under them, must be considered and dealt with as a sale and not as a loan, so as to preserve in favor of the association a vendor's lien and privilege on the property conveyed and reconveyed.' To the same effect are the following cases: American Homestead Co. v. Karstendiek, 111 La. 884, 35 So. 964; Holloman v. Alexandria & Pineville Building & Loan Ass'n, 137 La. 970, 69 So. 764; Hutts v. Crowley Building & Loan Ass'n, 146 La. 85, 83 So. 417; Barnes v. Thompson, 154 La. 1036, 98 So. 657; Liquidators of Prudential Savings & Homestead Society v. Langermann, 156 La. 76, 100 So. 55."
39 So.2d at 736
Our Supreme Court has consistently stated that as between the loan association and *1052 the parties to the transaction, such as the borrower or his or her creditors, the sale/resale is actually a sale, giving rise to a vendor's lien and translative of title. Hausler v. Nuccio, supra; Capillon v. Chambliss, 211 La. 1, 29 So.2d 171 (1946); Mayre v. Pierson, 171 La. 1077, 133 So. 163 (1931).
Raffino v. Hunt, supra, cited by plaintiffs, involved a suit where a husband sought to have a certain tract declared his separate property. His wife reconvened, alleging that the property became community by virtue of a sale/resale to a loan association by the husband during the marriage. In this context, the Supreme Court held that the sale/resale was purely a pignorative contract for the purpose of providing the homestead with a vendor's lien and first mortgage. The court stated:
"the prime objective of the Legislature was to have homestead associations secured by a vendor's lien and that it was never its aim to produce a change in the status of property from separate to community as the consequence of the placing of a secured loan thereon."
99 So.2d at 37
However, the court reiterated that it was to be considered an actual sale and resale as to the parties to the transaction, and even distinguished Hausler v. Nuccio, supra, in a footnote. Raffino v. Hunt, supra, 99 So.2d at p. 37, footnote 2. The cases which refer to the sale/resale as a pignorative contract all involve parties challenging the status of the property. Often, the courts therein distinguish the cases involving parties to the transaction and those claiming through them. See, e.g., Capillon v. Chambliss, supra; Succession of Farley, 205 La. 972, 18 So.2d 586 (1944); Mayre v. Pierson, supra; Fontenot v. Fontenot, 339 So.2d 897 (La. App. 3rd Cir.1976), writ denied 342 So.2d 217 (La.1977); Lazaro v. Lazaro, 92 So.2d 402 (Orl.Ct.App.1957). We are concerned with parties to the sale/resale transaction and those claiming rights through them. As such, we agree with defendants that the sale by the Savings and Loan to J.N. Shilling must be considered an actual sale, fully translative of title.
Plaintiffs also contend that the sale by the Savings and Loan to J.N. Shilling was by a quitclaim deed, and thus the after-acquired title doctrine does not apply. Plaintiffs point to the language of the deed and also cite La.R.S. 6:766[7], which states:
"In all sales made by associations of property acquired by them for the purpose of making a loan on the security of such property, the warranties and obligations imposed by law on vendors shall not apply to such associations."
A quitclaim deed is one which purports to transfer nothing more than the interest which the grantor may have, if any, at the time of the transaction, and excludes any implication that he has any title or interest in the described realty. Waterman v. Tidewater Associated Oil Co., supra; Simon v. Simon, 138 So.2d 260 (La.App. 2nd Cir. 1962), writ denied on April 19, 1962. The subsequent acquisition of the title by the grantor will not automatically vest title in the grantee by virtue of the after-acquired title doctrine. Waterman v. Tidewater Associated Oil Co., supra. A quitclaim deed transfers nothing more than an interest, while a sale purports to transfer the property itself. In determining whether an instrument is a quitclaim deed, reference should be made to all the language and recitals therein, to ascertain the parties' intentions, and even the fact that the deed is denominated a quitclaim is not conclusive. Armstrong v. Bates, 61 So.2d 466 (La.App. 1st Cir.1952).
The instrument of resale states that the Savings and Loan, through its representative:
"declared that for the consideration hereinafter mentioned, it has by these presents, granted, sold and conveyed and does grant, sell and convey unto J.N. SHILLING, ... such title only as the Association acquired in act of sale of even date herewith, without warranty of any kind whatsoever, or obligation for the restitution of the purchase price, but with *1053 complete transfer and subrogation of all its rights and actions of warranty against all former owners thereof ...."
And further,
"To have and to hold said property unto said vendee, heirs and assigns, forever, under the restricted warranty, as aforesaid." [Emphasis ours]
The language of the resale deed does not contain the terms, "quitclaim," "remise," "release," or "relinquish," which are typical of a quitclaim deed. See: Waterman v. Tidewater Associated Oil Co., supra; Simon v. Simon, supra; and Armstrong v. Bates, supra. It does not contain a specific exclusion of any implication that the Savings and Loan had title, but rather states that the Savings and Loan "does grant, sell and convey unto J.N. SHILLING, ... such title only as the Association acquired in act of sale of even date herewith, ..." and that J.N. was "to hold said property" [Emphasis ours]. The fact that the sale was without warranty does not negate the intention of the Savings and Loan to have "conveyed" the property to J.N. Shilling. In Hausler v. Nuccio, supra, the resale deed by the homestead was similar to the present deed, and the court found that the transaction was a sale. The resale deed was described by the defendant, therein, as follows:
"it, in turn, transferred the property to the plaintiff without warranty, but substituting and subrogating her to all actions in warranty that it had against all previous owners; ..." [Emphasis ours]
39 So.2d at 735
Therefore, we conclude that the resale deed from the Savings and Loan to J.N. Shilling purported to transfer the property itself, and was not a quitclaim deed. It was a sale, without warranty, but with full subrogation rights.
We must now determine whether the after-acquired title doctrine applies to a sale of this kind. The resale was "without warranty of any kind whatsoever, or obligation for the restitution of the purchase price," but with complete subrogation. Parties may agree that the seller shall not be subject to any warranty; however, the buyer will still be subrogated to the seller's rights and actions in warranty against former sellers. La.C.C. art. 2503. Also, La. C.C. art. 2505 states:
"Even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware, at the time of the sale, of the danger of the eviction, and purchased at his peril and risk."
The after-acquired title doctrine is normally applied to enforce the seller's warranty against eviction and his obligation to deliver a good title. Even in a non-warranty deed, the seller is still obligated to deliver good title. La.C.C. art. 2505. The present resale deed is very limiting, as it excludes even the seller's warranty against eviction. However, we find this language consistent with La.R.S. 6:766, wherein the Legislature provided that the warranties normally imposed by law on vendors, would not be applicable to sale/resale transactions.
The Legislature provided that the resale would be considered as a sale, and not a loan, so as to give rise to a vendor's lien. La.R.S. 6:766 provides in pertinent part:
"and the association, to secure payment of the amount due by the member has a privilege of equal rank with a vendor of immovable property and enjoys for the protection of its claim and the enforcement of its loan all the rights, privileges, and securities which are now accorded by law to the vendor of the property."
These types of sales, without warranty, by loan associations are common. In Russell v. Bartlett, 139 So.2d 770 (La.App. 4th Cir. 1961), the court held that the interposition of a homestead in a sale/resale does not affect the relationship of vendor and vendee existing between the parties, where the purchaser of a dwelling sued the vendor for a redhibitory defect in the roof. The court commented:
"In Louisiana homesteads and building and loan associations play a leading role in the sales of immovable property on credit in that they finance the credit portion of numerous such transactions. The procedure is for the vendor to sell the *1054 property direct to the homestead association, which in turn sells to the vendee without warranty for the amount of the loan, retaining as security therefor a vendor's lienmortgage and privilege on the object of the sale. This is in compliance with LSA-R.S. 6:766."
139 So.2d at 766
Thus, the Legislature chose to give the loan associations the full benefits of a sale enjoyed by vendors, by creating a vendor's lien, yet, without imposing warranty obligations. La.C.C. art. 2504 provides:
"Although it be agreed that the seller is not subject to warranty, he is, however, accountable for what results from his personal act; and any contrary agreement is void."
In Waterman v. Tidewater Associated Oil Co., supra, the Supreme Court, in discussing the after-acquired title doctrine stated:
"it may even be proper to extend application of the doctrine to a sale without warranty where the land conveyed is adequately described. In such a case, it might be argued that the vendor would be precluded from subsequently acquiring an adverse title to the prejudice of the vendee under Article 2504 of the Civil Code, which declares that: `Although it be agreed that the seller is not subject to warranty, he is, however, accountable for what results from his personal act; and any contrary agreement is void.'
See also Articles 2503 and 2505."
35 So.2d at 233
And in Butler v. Bazemore, 303 F.2d 188 (5th Cir.1962), in discussing the after-acquired title doctrine in the context of certain disputed mineral interests, the court commented in footnote 11:
"There is force, however, in the suggestion that even a quitclaim deed should support after-acquired title, if the parties intended the deed to act as a conveyance of title and not primarily as a release of the vendor's claim to the property. Such a view would agree with Louisiana principles of warranty. See Comment, 23 Tul. L.Rev. 533 (1949); Carter Comment, Mineral Rights and After-Acquired Title, 18 Tul.L.Rev. 312, n. 3 (1958). The notion of a quitclaim deed developed in the common law when, historically, its function was to release any interest the vendor had in the property; acquisition of title was incidental. 16 Am.Jur. § 18."
303 F.2d at 194
Also, in Rycade Oil Corp. v. Board of Commissioners, Etc., 129 So.2d 302 (La.App. 3rd Cir.1961), writ denied on June 20, 1961, the court was faced with determining whether an instrument was a quitclaim deed. The court held that where the Board had sold the disputed property to plaintiff's ancestor in title, subrogated him to their rights against former proprietors, and obligated itself to perfect the title acquired by the ancestor, the technical labeling of the deed as a quitclaim or nonwarranty deed would not prevent application of the after-acquired title doctrine.[8]
These sale/resale transactions are somewhat hybrids in our law. While considered as "real" sales in some situations, they are entered into for the purpose of establishing a security device. Our review convinces us that it was not the intent of the Legislature, in enacting La.R.S. 6:766, to prevent the operation of the after-acquired title doctrine in resales by homesteads and loan associations. To allow such would cloud titles throughout the State, anytime an owner chose to use his property as security for a loan, by means of a sale/resale. Therefore, we hold that the after-acquired title doctrine operates to vest full title by virtue of the act of joinder.
For all of the foregoing reasons, we affirm the trial court's determination that the act of joinder conveyed the property to the Savings and Loan and cured any previous *1055 title defects, and that the defendants' mineral leases and Vasser's royalty deed are all valid and binding. All costs of this appeal are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] Separate motions were filed as follows: (1) Motion for Summary Judgment on behalf of Philip W. Vasser, filed April 1, 1982, (2) Motion for Summary Judgment on behalf of Exchange Oil & Gas Corporation, filed April 5, 1982, (3) Motion for Partial Summary Judgment on behalf of Sabine Production Company, Sabine Corporation, J.P. Robbins, III, Charles M. Meeks, and Amoco Production Company, filed April 2, 1982, and (4) Motion for Summary Judgment on behalf of C.T. Carden, et als., filed April 2, 1982.
[2] A Motion for Partial Summary Judgment on behalf of plaintiff-trusts, namely, the Christine Mae Shilling Inter Vivos Trust No. 1, the John Paul Shilling Inter Vivos Trust No. 1, and the Paulette Leah Uggen Inter Vivos Trust No. 1, was filed on February 16, 1982.
[3] Any conceivable confusion over what Eddie and Ruby Shilling intended to do in this act of joinder was put to rest when their depositions were taken, where they confirmed that they wanted their son and daughter-in-law to have the property.
[4] See La.C.C. arts. 2271-2273.
[5] The doctrine is well established in Louisiana and stands for the proposition that if a vendor sells property he does not own, and subsequently acquires title, the title will automatically vest in his vendee.
[6] This provision is now contained in La.R.S. 6:833(D); however, the language has remained the same.
[7] Again, this language is now codified in La. R.S. 6:833(E).
[8] We note that the Second Circuit, en banc, in Freeman v. Turner, supra, recently held that the after-acquired title doctrine would not apply to a sale without warranty, where the buyer knew of the danger of eviction, and yet purchased at his own risk and peril. The court was not therein concerned with a sale/resale transaction, and also restricted its holding to the narrow facts presented.