STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


23-299



JESSICA ALLEMAN MAGNON

VERSUS

JEREMIAH MAGNON




**********


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20144742
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

**********

**WILBUR L. STILES**
**JUDGE**

**********

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Wilbur L. Stiles,
Judges.




**AFFIRMED.**

**John W. Tilly**
**William A. Keaty, II**
**Keaty & Tilly, LLC**
**2701 Johnston Street, Suite 307**
**Lafayette, LA 70503**
**(337) 347-8995**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **Jessica Alleman Lahood**

**Robert C. Lowe**
**Paula Hamilton Lee**
**Lowe Stein LLC**
**701 Poydras Street, Suite 3600**
**New Orleans, LA 70139**
**(504) 581-2450**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Jeremiah Magnon**

**Barry Joseph Sallinger**
**Barry J. Sallinger, APLC**
**820 East St. Mary Boulevard, Suite 1**
**Lafayette, LA 70503**
**(337) 235-5791**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **South Side Towing, LLC**
 **Breaking Barriers, LLC**

**Don Landry**
**District Attorney, 15th Judicial District**
**Shane Mouton**
**Special Assistant District Attorney**
**Post Office Box 2609**
**Lafayette, LA 70502**
**(337) 235-0751**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana**

**STILES, Judge.**

The trial court ordered Appellant Jeremiah Magnon to pay Appellee Jessica Alleman Magnon (now Jessica Lahood) an equalizing payment in the amount of $155,936.19, following the partition of the community of acquets and gains formerly existing between the parties. Mr. Magnon appeals. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Magnon and Ms. Lahood were married in August 2002. During the course of the marriage, the parties owned and operated Imperial Consulting, LLC, a safety consulting and training business.

Ms. Lahood filed a petition for divorce on September 16, 2014. The couple owned two homes at that time. In November 2014, Ms. Lahood was granted exclusive use of the home located on Marteau Road in Youngsville, whereas Mr. Magnon was granted exclusive use of the home located on Gauraud Road in Abbeville. Each party was awarded the fair market rental value of the home in which the other party resided. Moreover, Mr. Magnon was ordered to provide the utilities and mortgage payments on the Marteau Road property, the residence granted to Ms. Lahood. He was also ordered to provide payments and insurance on the 2014 Ford Explorer driven by Ms. Lahood.

The following month, December 2014, Mr. Magnon purportedly sold Imperial Consulting to a third-party, his brother-in-law, but did not provide Ms. Lahood with proceeds from the sale. Suggesting that Mr. Magnon's dissolution of Imperial Consulting was mere artifice, Ms. Lahood noted that Mr. Magnon continued to pay community expenses and his child support obligation from the new iteration of the business for a number of years.

The trial court rendered a judgment of divorce on November 23, 2015. The community formerly existing between the parties was terminated retroactive to the filing date of the petition for divorce in September 2014.

Mr. Magnon filed a petition for judicial partition of the community property in January 2016. With the petition pending, the parties' community obligations continued to evolve through several hearing officer conferences. Ms. Lahood, for instance, made the mortgage payments on the Marteau Road property but, in October 2018, Mr. Magnon was granted exclusive use of the home. Ms. Lahood was therefore granted a rental reimbursement claim for the home. Those rulings were reduced to judgment in October 2018.

Although Mr. Magnon was represented by counsel in early proceedings, he began representing himself in 2019 as the parties continued to work toward the valuation and partition of their community property. The parties ultimately narrowed the remaining contested issues by the execution of a Final Joint Detailed Descriptive List in June 2022. In addition to the two residences, the parties identified that a 2014 Ford Explorer remained "To be sold" and that the "Value of Imperial Consulting" remained to be determined. The parties also quantified their respective reimbursement claims. The parties subsequently entered into a Consent Judgment, agreeing that both residences would be listed and sold. They further agreed to sell the 2014 Ford Explorer.

When the community property issues were heard on October 31, 2022, the trial court was largely asked to resolve the parties' reimbursement claims. Only the Marteau Road property and immovable property owned by Imperial Consulting remained at issue as the Gauraud Road property and the 2014 Ford Explorer had been sold by that time.

In written reasons for ruling, the trial court rejected Mr. Magnon's contention that he had dissolved Imperial Consulting on December 5, 2014 that he therefore did not owe Ms. Lahood reimbursement for that asset. The trial court explained that, although Jeremiah attempted to unilaterally dissolve the LLC by affidavit, La.R.S. 12:1335.1 permits dissolution by that procedure only if the LLC "is no longer doing business, owes no debts, and owns no immovable property[.]" However, the trial court recognized that Imperial Consulting owns immovable property in Broussard. Finding Mr. Magnon's dissolution of "no effect[,]" the trial court determined that Ms. Lahood "is entitled to ½ of the value of the company and the immovable property it owned." Referencing the reports of Ms. Lahood's accountant and appraiser, the trial court awarded Ms. Lahood $53,000.00 for her share of Imperial Consulting and $88,500.00 for her one-half share of its immovable property.

The resulting January 11, 2023 judgment and an amended judgment of November 2, 2023 [1] awarded each party ownership of all movables in their possession, ordered that the parties sell the 1207 Marteau Road property and that they equally divide the net proceeds, and ordered Mr. Magnon to pay Ms. Lahood an equalizing payment of $115,936.19. The judgment otherwise broadly resolved all claims arising from the community and co-ownership of the former community property.

Mr. Magnon, now represented by counsel, appeals and advances the following assignments of error:

1. As a pro se litigant, Jeremiah Magnon was denied due process because he did not receive the appropriate latitude from the court, and his access to the Court was effectively impeded.

---

[1] The appellate record has been supplemented with the amended judgment.

2.  The Judgment rendered and signed by the Trial Court relies on hearsay evidence for valuations, as no experts were present in Court to testify as to the values contained in various expert reports entered into evidence by Jessica Magnon, and the Trial Court did not even ask Mr. Magnon, a pro se litigant, if he had any objection to the reports being entered into evidence before the Court accepted them as admitted, which is legal error. Mr. Magnon entered evidence which he testified about, and which the court did not consider, further impeding his access to the Court.

3.  The Judgment awards a net "equalizing payment" to Jessica Magnon that includes an amount for one-half of the value of the community business, Imperial Consulting, LLC, which is a Limited Liability Company, but it does not allocate the business to Jeremiah Magnon, which is legal error.

4.  The Judgment awards a net "equalizing payment" that includes a reimbursement claim [sic] to Jessica Magnon for one-half of the value of the immovable property owned by the community business, Imperial Consulting, LLC, but it does not award the immovable property to Jeremiah Magnon, as part of the LLC, which is also legal error.

5.  It was legal error to value the immovable property owned by the Limited Liability Company separately. It should have been included in the value of the business, and any debt on the immovable property should have been considered. Immovable property owned [in a] LLC is owned by the LLC and not by the parties individually.

6.  The Judgment awards Jessica Magnon a net "equalizing payment" of $115,936.19, which amount can only be properly understood by reference to the Trial Court's Reasons for Judgment, which is contrary to law. Further, the Written Reasons for Judgment improperly calculate values of assets and reimbursement claims, and fail to take into account community liabilities.

## DISCUSSION

*Final Judgment*

We first address Mr. Magnon's contention that the judgment under review is not sufficiently certain to constitute a final judgment. He maintains that the judgment

is instead a "quagmire" and that it is in need of correction on appeal. Mr. Magnon's argument conflates two concepts in ostensibly questioning the finality of the underlying judgment but largely complaining of the amount awarded. We consider both aspects of Mr. Magnon's argument.

Despite the fact that Mr. Magnon is the appellant, this assignment fundamentally inquires whether this court has the subject matter jurisdiction to consider his appeal. *See* La.Code Civ.P. art. 2083. *See also Input/Output Marine Sys., Inc. v. Wilson Greatbatch, Tech., Inc.*, 10-477 (La.App. 5 Cir. 10/29/10), 52 So.3d 909.[2] We thus take Mr. Magnon's assignment out of turn and consider this foundational inquiry before turning to his remaining arguments.

This court has explained that a final judgment must be precise, definite, and certain. *Morgan v. Pardue*, 15-149 (La.App. 3 Cir. 10/7/15), 175 So.3d 1053. Louisiana Code of Civil Procedure Article 1918(A) provides that "[a] final judgment … shall be identified as such by appropriate language; shall be signed and dated; and shall, in its decree, identify the name of the party in whose favor the relief is awarded, the name of the party against whom the relief is awarded, and the relief that is awarded." Jurisprudence also indicates that a final judgment must identify the relief that is granted or denied. *Morgan*, 175 So.3d 1053. In the event a final judgment is rendered on a money demand, the amount of recovery must be indicated with certainty and precision. *Id.* Those amounts may not be determined by a future contingency. *Id.*

---

[2] We note that in the jurisdictional statement of his brief to this court, Mr. Magnon writes that "A final appealable judgment was signed in this matter on January 11, 2023." (Footnote omitted.) As noted, the trial court thereafter issued an amended judgment.

The judgment under review includes those hallmarks. In pertinent part, the judgment reflects that the trial court ordered, adjudged, and decreed that "JEREMIAH MAGNON owes JESSICA ALLEMAN MAGNON an equalizing payment of One Hundred Fifteen Thousand Nine Hundred Thirty Six and 19/100 ($115,936.19) Dollars." *See Dalcourt v. Moyer*, 18-412, p. 4 (La.App. 3 Cir. 12/6/18), 260 So.3d 694, 697 ("In the event that a purported final judgment is rendered upon a money demand … the judgment must indicate the amount of recovery with certainty and precision.").[3]

While framing his argument as one pertaining to the finality of the judgment, Mr. Magnon chiefly argues that the judgment was required to contain the calculations and findings underlying the trial court's award of the equalizing payment of $115,936.19. He maintains that he cannot challenge the trial court's ruling otherwise.

The judgment, however, includes the precise amount for which Mr. Magnon was cast in judgment as is required of a final judgment both by La.Code Civ.P. art. 1918 and by jurisprudence. Mr. Magnon points to no authority for the proposition that a final judgment must contain a line item recitation of fact finding and underlying calculations. The case on which he relies, *In re: Commitment of Cole*, 18-916 (La.App. 3 Cir. 1/16/19) (unpublished opinion) (2019 WL 212178), merely

---

[3] Mr. Magnon does not question the judgment to the extent it references the former community's remaining item of immovable property. The judgment identifies that property with particularity as the property is listed by physical address. *See* La.Code Civ.P. art. 1919; La.Code Civ.P. art. 2089. To the extent the judgment anticipates a future contingency as it commands that "the home and property at 1207 Marteau Road, Youngsville, Louisiana 70592 shall be sold by the parties and the net proceeds divided equally[,]" we point out that this court retains jurisdiction to consider non-appealable matters under its supervisory jurisdiction. *See* La.Const. art. V, § 10(A) (providing that a court of appeal "has supervisory jurisdiction over cases which arise within its circuit."). *See also Stelluto v. Stelluto*, 05-74 (La. 6/29/05), 914 So.2d 34; *Rigmaiden v. Dellafosse*, 22-816 (La.App. 3 Cir. 3/29/23), 364 So.3d 472. In any event, Mr. Magnon does not seek relief from that aspect of the trial court's order.

reflects that written reasons do not constitute a final judgment if they do not otherwise contain proper decretal language. The panel in *Cole* determined that the written reasons appealed from neither disposed of nor dismissed the underlying claims and could not, therefore, constitute a valid final judgment. *Id.* In contrast, the judgment in this case disposes of the issues submitted and casts Mr. Magnon in judgment for a precise figure.

While Mr. Magnon argues that the judgment is invalid because the trial court's calculations can only be ascertained by reference to written reasons, the Louisiana Code of Civil Procedure provides for the judgment and the written reasons to work hand-in-glove, as they do in this case. Article 1918 requires that the final judgment identify the "relief awarded" whereas Article 1917 provides for findings of the court and reasons for judgment. Article 1917 instructs that: "In all appealable contested cases, other than those tried by a jury, the court when requested to do so by a party shall give in writing *its findings of fact and reasons for judgment ….*" (Emphasis added.)

The trial court did so in this case, rendering judgment for a certain, precise figure, and otherwise revealing its factual findings and calculations in five pages of written reasons.[4] Therein, the trial court discussed Mr. Magnon's claims for

---

[4] After the trial court expressed its findings regarding the valuations at issue and the parties' reimbursement claims, the trial court provided the following line item calculation:

### CONCLUSION

**Based on the above, the parties have the following reimbursement claims:**

Jessica:

| | |
|---|---|
| ½ rental reimbursement on 1207 Morteau Road | $ 49,200.00 |
| ½ rental reimbursement on 205 Gauraud Street | $ 39,511.30 |
| ½ reimbursement of Imperial Consulting | $ 53,500.00 |
| ½ reimbursement of 210 N. Morgan Street | $ 88,500.00 |

reimbursement for mortgage payments, each party's rental reimbursement claims, the valuation of the couple's immovable property, the valuation of a community vehicle, and Mr. Magnon's reimbursement claim for notes and insurance payments. The trial court specifically addressed the valuation of Imperial Consulting and Mr. Magnon's reimbursement claims at length, awarding those it found due and specifically rejecting the totality of the expenses claimed by Mr. Magnon.

Although Mr. Magnon claims that the reasons for ruling indicate that the trial court failed to consider "evidence" of expenses incurred in maintaining these community assets, we find no deficiency in either the reasons for ruling or the judgment. Instead, the evidence relied upon by Mr. Magnon consists of a spreadsheet that includes "bills" attributable to utility costs and the like. By their Joint Descriptive List, however, the parties only placed reimbursement claims for "Mortgage Payments" and "Rental Value/Reimbursement" before the court. No component of the Joint Descriptive List included claims for reimbursement of the type of payments Mr. Magnon contends that the trial court failed to award. Instead, the trial court's plainly focused on the limited issues placed before it and structured its ruling accordingly. Further, much of Mr. Magnon's argument pertains to an eleven

---

| | |
|---|---|
| ½ Attorney's Fees | $   2,725.00 |
| Total: | $233,436.30 |

Jeremiah:

| | |
|---|---|
| ½ mortgage payments on 1207 Morteau Road | $ 34,387.09 |
| ½ rental reimbursement on 1207 Morteau Road | $ 48,175.00 |
| ½ mortgage payments on 205 Gauraud Street | $ 32,039.69 |
| ½ note and insurance payments on 2014 Explorer | $      998.33 |
| ½ Attorney's fees | $   1,900.00 |
| Total: | $117,500.11 |

The reimbursement amount found due Jessica less the amount due Mr. Magnon mirrors the amount by which he was cast in judgment by the judgment under review.

month period for which the trial court found he had no claim on the Marteau Road property.[5]

Following review, we find that Mr. Magnon has failed to point to any deficiency in either the judgment or in the trial court's ruling.

*Procedural and Evidentiary Concerns*

By his first and second assignments of error, Mr. Magnon suggests that he was denied due process by the trial court's failure to afford him appropriate latitude in procedural and evidentiary matters. Now represented on appeal, Mr. Magnon contends that the trial court should have offered him instruction in proceeding at the hearing "in order to assist him somewhat as a pro se litigant." Mr. Magnon specifically complains that the trial court failed to admonish Ms. Lahood's counsel for leading his client during her testimony and failed to allow Mr. Magnon to question Ms. Lahood more broadly in her testimony regarding the valuation of Imperial Consulting. Principally, however, Mr. Magnon contends that the trial court impermissibly allowed Ms. Lahood to introduce the report of her business valuation without calling the expert as a witness. Although he did not object to the introduction of the report as an exhibit, Mr. Magnon asserts that he was unable to refute the expert's conclusions expressed therein. Mr. Magnon explains that he "had no idea

---

[5] With regard to mortgage payments on the Marteau Road property, the trial court explained:

> At trial, Jeremiah claimed reimbursement for payments made as of November 22, 2016, the date of his judicial demand to terminate those payments as support. However, the evidence presented at trial shows that Jessica began making the mortgage payments in November 2016 and continued to do so for a period of eleven months. Jeremiah disputes this and argues, in his post-trial submission, that she paid the notes for four months. He did not, however, present any evidence at trial to support this argument. Therefore, the Court finds Jessica made eleven mortgage payments and Jeremiah is not entitled to reimbursement for that period of time. Jeremiah's payments thereafter total $68,774.18, which entitles him to a reimbursement claim of $34,387.09.

what a hearsay objection was or that he could even say anything when [counsel for Ms. Lahood] admitted the evidence." He contends that the introduction of the report was legal error, was extremely prejudicial to him, and materially affected the outcome of his case. By his appellant's brief, Mr. Magnon argues that a faulty valuation method utilized by Ms. Lahood's expert, coupled with the trial court's rejection of Mr. Magnon's testimony, deprived him of a "fair shake" at trial.

Certainly, unrepresented parties are generally allotted more latitude than parties represented by counsel as they lack formal training in the law and its rules of procedure. *Hoffpauir v. Hoffpauir*, 21-473 (La.App. 3 Cir. 2/9/22), 333 So.3d 1262. However, a party appearing in proper person, such as Mr. Magnon, "'assumes the responsibility of familiarizing himself with applicable procedural and substantive law. His failure to do so does not give him any greater rights than a litigant represented by an attorney.'" *Id.* at 1270 (quoting *Harrison v. McNeese State Univ.*, 93-288 (La.App. 3 Cir. 3/23/94), 635 So.2d 318, 320, *writ denied*, 94-1047 (La. 6/17/94), 638 So.2d 1099). Rather, "pro-se litigants assume responsibility for their lack of knowledge of the law." *Food Perfect, Inc. v. United Fire & Cas. Co.*, 12-2492, p. 2 (La. 1/8/13), 106 So.3d 107, 108.

Beyond mere latitude, however, Mr. Magnon argues that the trial court should have offered instruction and assistance. He pointedly maintains that the trial court should have stepped in to admonish Ms. Lahood's counsel for leading his client in her testimony. Mr. Magnon further acknowledges that he did not object to the purported hearsay nature of the business valuation report but contends that the trial court legally erred in admitting the report. He contends that the trial court's reliance thereon "deprived him of the right to be allocated the business at its fair value."

10

Although Mr. Magnon characterizes himself as having been deprived of the right to be allocated the business at its fair value, in reality Mr. Magnon chose to proceed without counsel and without having secured his own business valuation opinion. Mr. Magnon's contention that the trial court was required to intervene to remedy the shortcomings in his presentation ignores the trial court's role as a neutral arbiter. *See, e.g.*, Louisiana Code of Judicial Conduct Canon 3(A)(4).[6]

These assignments lack merit.

*Imperial Consulting*

Mr. Magnon next questions the trial court's disposition of the assets of Imperial Consulting, a community asset that Mr. Magnon attempted to dissolve upon the filing of the petition for divorce. Ms. Lahood maintained that Mr. Magnon's purported dissolution of the company was a pretext to deprive her of her portion of the value of the company and noted that the business was later registered to Mr. Magnon's brother-in-law under the same name. While Mr. Magnon continued to receive income from the business, he contended that any income was for his work as a consultant.

The trial court rejected Mr. Magnon's position, explaining that the purported dissolution of Imperial Consulting was ineffective pursuant to La.R.S. 12:1335.1,

---

[6] Addressing "Adjudicative Responsibilities," Canon 3(A)(4) provides:

> A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, and shall not permit staff, court officials or others subject to the judge's direction and control to do so. A judge may make reasonable efforts, consistent with the law and court rules, to facilitate the abilities of all litigants, including self-represented litigants, to be fairly heard, provided, however, that in doing so, *a judge should not give self-represented litigants an unfair advantage or create an appearance of partiality to the reasonable person.*

(Emphasis added.)

which does not permit dissolution of an LLC by affidavit of a sole member if the company owns immovable property. The trial court therefore awarded Ms. Lahood one-half of the value of the company as well as one-half of the value of immovable property it owned on North Morgan Street in Broussard, Louisiana. The trial court accepted the business and property valuations expressed in the reports prepared by Ms. Lahood's accountant and appraiser.

By his third and fourth assignments of error, Mr. Magnon focuses on the trial court's remark that the unilateral dissolution of Imperial Consulting was without effect. He contends that such a finding, as well as the inclusion of the business's value in calculating the equalizing payment, required a corresponding allocation of the business and its property to him pursuant to La.R.S. 9:2801(A)(4).[7] Citing *Sabine*

---

[7] Louisiana Revised Statutes 9:2801 provides, in part:

    A.      When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:

        . . . .

        (4)      The court shall then partition the community in accordance with the following rules:

        (a)      The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.

        (b)      The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.

        (c)      The court *shall allocate* or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation

*Prod. Co. v. Guaranty Bank & Trust*, 432 So.2d 1047, 1051 n.5 (La.App. 1 Cir.), *writ denied*, 438 So.2d 570 (La.1983), Mr. Magnon contends that "if a vendor sells property he does not own, and subsequently acquires title, the title will vest in his vendee."

Mr. Magnon's argument invoking the after-acquired title doctrine is misplaced. The parties' Final Joint Descriptive List indicates that only the "*Value* of Imperial Consulting" and Ms. Lahood's corresponding reimbursement claim for "Withdrawals made by Jeremiah from Imperial Consulting" remained "TBD." (Emphasis added.) Simply, the ownership interest in Imperial Consulting or its immovable property were not before the court. Accordingly, this assignment lacks merit.

*Mortgage*

Finally, Mr. Magnon contends that the trial court erred in failing to account for a mortgage on Imperial Consulting's immovable property, which, he argues, undermines Ms. Lahood's business valuation. The evidence Mr. Magnon relies on, however, is a single line-item on a "Balance Sheet of Imperial Consulting" reflecting a "Long Term Liability" of "N/P - Morgan" in the amount of $111,027.47. Mr. Magnon provided no additional testimony or documentation regarding a mortgage and as addressed above, did not provide an independent valuation of the company. He relies instead on the balance sheet, which he contends corroborates Ms. Lahood's testimony that the business property was mortgaged. Ms. Lahood's testimony in that regard, however, was limited to a single statement that, "Yes, there was a

---

of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.

(Emphasis added.)

mortgage[,]" which was in response to questioning by the trial court. The record is otherwise silent on the issue.

Given this lack of evidentiary background, we do not disturb the valuation determined by the trial court.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assigned to Appellant Jeremiah Magnon.

**AFFIRMED.**