532 So.2d 272 (1988)
CAJUN CAPITAL, INC. Plaintiff-Appellant,
v.
Joseph BOURQUE Defendant-Appellee.
No. 87-785.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
Ted W. Hoyt, Lafayette, for plaintiff-appellant.
*273 Ralph K. Lee, New Iberia, for defendant-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
In July 1986 Joseph Bourque signed a listing agreement giving Cajun Capital, Inc. (Cajun) the exclusive right to sell the community property enterprise known as "Mary Lou's Flowers & Gifts" in New Iberia, Louisiana. The Mary Lou of this enterprise was his wife. The agreement was for a period of six months. The listing agreement declared that if the business was sold at any time during its duration, the seller would pay Cajun a brokerage commission of 12% of the gross sales price or $5,000, whichever was larger.
Less than a month later a representative of Cajun showed the business to Angie Boudreaux who, on July 25, 1986, signed a confidentiality agreement.
A few days after that, in early August 1986, a Cajun representative and Angie Boudreaux met and Angie Boudreaux deposited $100 as good faith money which was to be returned to her at closing. One week later Joseph Bourque and his wife, Mary Lou Bourque, conveyed the community property enterprise to Angie Boudreaux and her husband, Artie James Boudreaux, for the sum of $19,000. Cajun apparently did not participate in this act of sale.
The above events were recited by the trial judge as being the facts upon which the reasons for his decision rested.
As a result of the above transactions, Cajun demanded a brokerage commission of $5,000, along with all costs of enforcing the agreement, and attorney's fees. When the Bourques refused to pay, Cajun filed suit.
The Bourques resisted the suit contending that the listing agreement was a nullity, because Mary Lou never signed it and it constituted an encumbrance of community property which required the consent of both spouses in accordance with La.C.C. art. 2347. The trial court agreed, declaring the listing agreement an absolute nullity and unenforceable, and dismissed Cajun's suit.
Cajun filed this appeal. For reasons which follow, we reverse and remand.
Until January 1, 1980, when the new matrimonial regimes enactments were incorporated into the Civil Code, C.C. art. 2404 characterized the husband as "head and master" of the community of acquets and gains, giving him sole authority to administer community effects and to alienate immovable property belonging to the community without his wife's participation or consent. The new provisions which went into effect in 1980, dealing with management of community property, establish the principle of equal management by means of C.C. art. 2346, which declares:
"Each spouse acting alone may manage, control, or dispose of community property unless otherwise provided by law."
The next article, C.C. art. 2347, provides one of the "otherwise provided by law" situations in which the concurrence of the other spouse is required. This article reads as follows:
"The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables, furniture or furnishings while located in the family home, all or substantially all of the assets of a community enterprise and movables issued or registered as provided by law in the names of the spouses jointly."
Mary Lou's Flowers & Gifts is apparently a community enterprise and, if so, the alienation, encumbrance, or lease of the whole enterprise would require concurrence of the spouses.
Mary Lou joined in the act of sale to Artie James and Angie Boudreaux, but she did not sign the exclusive listing agreement.
The precise question before us, therefore, is whether the requirement of concurrence applies to an exclusive listing agreement for the sale of all or substantially all of the assets of a community enterprise.
*274 In our opinion, the provisions of C.C. art. 2347 do not apply to a listing agreement because a listing agreement is not an alienation, encumbrance, or lease. The obligation to pay a commission which Joseph Bourque undertook when he signed the listing agreement was not a real obligation, defined by C.C. art. 1763 as a duty correlative and incidental to a real right. A real obligation attaches to a thing, either movable or immovable. C.C. art. 1764. If the obligation which Bourque undertook when he signed the listing agreement had been an encumbrance on the assets of the community enterprise, the obligation would have attached to the business and become the obligation of the acquirers, the Boudreauxs, when they bought that enterprise. Of course that did not happen. The Bourques recognized this when in their conveyance to the Boudreauxs:
"Appearer, [sic] JOSEPH E. BOURQUE and MARY LOU BOURQUE, being duly sworn, declared that there is no outstanding indebtedness on the above described movable property and on the inventory, declaring that all previous outstanding indebtedness on said items having been fully paid and liquidated and knows [sic] of no liens or encumbrances on any of said property." (emphasis supplied)
An encumbrance creates real obligations. Since the listing agreement did not create a real obligation, it was not an encumbrance.
Since we are dealing here with the management act of one spouse that did not operate as an encumbrance of all or substantially all of the assets of the community enterprise, C.C. art. 2347 does not apply. The trial court was accordingly in error in concluding that the listing agreement was null solely for want of the concurrence of Mrs. Bourque.
The record in this case consists only of the minutes, the pleadings, the documents in evidence, and the trial court's opinion. According to the minutes, the case went to trial on the merits, and "... AFTER HEARING THE PLEADINGS, EVIDENCE AND AGRGUMENTS [sic] OF COUNSEL IT IS ORDERED BY THE COURT THAT MEMO'S [sic] BE SUBMITTED BY COUNSEL ON THE LEGAL EFFECTS OF THE HUSBAND BINDING THE COMMUNITY: SAID BRIEF'S [sic] TO BE SUBMITTED WITHIN 20 DAYS." We assume from this that the trial court simply recessed the case to decide the issue of whether the husband could bind the community under the listing agreement, as a threshold question of law, relying solely on the documentary showing made at that stage of the trial. Believing that the husband could not do so, the trial judge so held and rendered a final judgment of dismissal.
Our reversal, therefore, means that the case must now be remanded for a completion of the trial on the merits. There are presently other issues appearing in the pleadings concerning which there has been no evidence. For example, in his original answer Joseph Bourque pleads that there was a subsequent oral agreement and counter offer made by Cajun which nullified the original listing agreement. An amending answer pleads that Cajun was not the procuring cause of the sale to the Boudreauxs. Other issues not yet specifically raised are conceivable. Although we recognize our duty to decide a case on the record before us if we can, in this case we cannot because there has been no trial on the merits.
For these reasons we reverse the judgment of the trial court and remand the case for a trial on the merits.
We will add that even if we did not reverse for the reasons given, we would have reversed and remanded, under the circumstances of this case as revealed by the limited record before us, for a trial on the merits to determine if Cajun should recover on the principle of unjust enrichment, with instructions to the trial court to be guided by the precepts of Creely v. Leisure Living, Inc., 437 So.2d 816 (La. 1983).
REVERSED AND REMANDED.