GLORIA YOUNG and 1ST CHOICE REALTY, L.L.C.
v.
E. BARTWELL COX and LISA F. COX d/b/a LOUISIANA DIRECT
No. 2008 CA 2089
Court of Appeals of Louisiana, First Circuit.
May 8, 2009.
Not Designated for Publication
TORI S. BOWLING, Counsel for Plaintiffs/Appellees, Gloria Young and 1st Choice Realty, L.L.C.
E. BARTWELL COX, LISA F. COX, Defendants/Appellants, In Proper Person.
Before: PETTIGREW, McDONALD, AND HUGHES, JJ.
HUGHES, J.
This is an appeal of a judgment granting a motion for summary judgment and dismissing appellant's claims. For the reasons that follow, we affirm.

FACTS
In the months of February and March 2000, Gloria Young, realtor and owner of 1st Choice Realty (hereinafter simply referred to as Ms. Young) and Bart Cox, husband of Lisa Cox, entered into a number of "Listing and Marketing Agreement[s]" wherein Ms. Young was given the "exclusive right to market and to sell, exchange or otherwise arrange to transfer" four properties on behalf of Mr. and Mrs. Cox: The Hunter's Way property, the Rose Hill property, the Hunter's Lake property, and the Rhonda Avenue property. In each of the agreements, Mr. Cox agreed to pay Ms. Young 5% "of the gross amount of any agreement to sell, exchange or other type of transfer." Further, the agreement stated that the "fee is earned when Seller enters into any agreement to sell, exchange or otherwise transfer title to a purchaser." Ms. Young secured buyers for three of the four properties, but was only paid 2.5% of the sale price of one of the properties.[1]
On November 2, 2000 Ms. Young filed a petition for damages against E. Bartwell and Lisa F. Cox d/b/a Louisiana Direct (The Coxes), alleging that she was owed the remaining 2.5% commission on the Hunter's Way property, as well as the full 5% commissions on the Rose Hill and Hunter's Lake properties. The Coxes answered Ms. Young's petition on May 10, 2001, denying her claims, but raising no affirmative defenses. Ms. Young propounded discovery on May 7, 2004.[2] On May 8, 2007, Ms. Young filed a motion to compel responses to that discovery, and in December 2007 Ms. Young filed for summary judgment. After a hearing, the trial court granted the summary judgment and awarded Ms. Young $21,640.50, representing the unpaid commissions on the three properties that were sold. The Coxes now appeal.

LAW AND ARGUMENT
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Samaha v. Rau, XXXX-XXXX, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882; Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, XXXX-XXXX, p. 5 (La. 4/9/03), 842 So.2d 373, 377; Boudreaux v. Vankerkhove, 2007-2555, p. 5 (La. App. 1 Cir. 8/11/08), 993 So.2d 725, 729-30.
In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. Hines v. Garrett, XXXX-XXXX, p. 1 (La. 6/25/04), 876 So.2d 764, 765.
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id., XXXX-XXXX at p. 1, 876 So.2d at 765-66.
Once parties contract, that contract is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. art. 2045, Sanders v. Ashland Oil, Inc. 96-1751, p. 7 (La. App. 1 Cir. 6/20/97), 696 So.2d 1031, 1036, writ denied, 97-1911 (La. 10/31/97), 703 So.2d 29. Whether a contract is ambiguous or not is a question of law. Sanders, 96-1751 at p. 9, 696 at 1037. When appellate review is not premised upon any factual findings made at the trial level, but instead is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct. Sanders, 96-1751 at p. 9, 696 at 1037.
In support of the motion for summary judgment, Ms. Young provided the following documents:
1. Listing and Marketing Agreement for the Hunter's Way property, signed by both Gloria Young and Bart Cox on February 23, 2000, and effective until midnight on August 25, 2000;
2. An Agreement to Purchase and Sell the Hunter's Way property for the price of $134,000, signed by Henry and Janice Stewart on March 7, 2000, and by Bart Cox on an unknown date.
3. An Affidavit stating that it was through her efforts that this buyer was secured and that she has received only 2.5% of the 5% commission owed on the Hunter's Way property;
4. Listing and Marketing Agreement for the Rose Hill property, signed by Gloria Young on March 2, 2000 and by Bart Cox on March 6, 2000 and effective until midnight on December 1, 2000;
5. A "New Construction Agreement to Purchase" the Rose Hill property for the price of $232,310.00, signed by Archie T. and Lisa Canaday and Bart Cox on March 1, 2000;
6. An affidavit stating that she secured buyers for the home, the agreement to purchase was entered into, and that she has never received the 5% commission she is owed;
7. Listing and Marketing Agreement for the Hunter's Lake property, signed by Gloria Young on February 25, 2000 and by Bart Cox on an unknown date, and effective until midnight on December 1,2000;[3]
8. A "New Construction Agreement to Purchase" the Hunter's Lake property for the amount of $137,500, signed by Lloyd and Polly Bergeron and Bart Cox on February 25, 2000;
9. A document signed by the parties and extending the agreement to purchase the Hunter's Lake property until October 20, 2000;
10. An affidavit asserting that it was through her efforts that the buyers listed above were secured, and that she has never received the 5% commission owed on this property.
In opposition to the motion for summary judgment, the Coxes admit that Mr. Cox entered into the listing agreements and that the listing agreements produced are true and correct copies of those agreements. The Coxes do not deny that Ms. Young procured buyers for the properties, or that they entered into purchase agreements with those buyers. Moreover, the Coxes made no allegation that those sales did not finalize. Rather, the Coxes opposed the summary judgment on the exclusive basis that the contracts were null. In support of their argument, the Coxes contend that Ms. Cox's signature was required for the contracts to be effective. Additionally they urge that two of the three contracts were also null on the basis that they did not yet own those properties at the time Mr. Cox entered into the agreement with Ms. Young. They did, however, later acquire ownership of those properties.

Ms. Cox's Failure to Sign the Contracts
The trial court held that Ms. Cox's signature was not required in order for the contracts to be valid. In so concluding, the trial court reasoned that because the Coxes were married, Mr. Cox had the apparent authority to contract on behalf of the community. And while we recognize the changes in the law regarding spousal concurrence and immovable property,[4] we take note of the third circuit case of Cajun Capital, Inc. v. Bourque, 532 So.2d 272 (La. App. 3 Cir. 1988) and its factual similarities to the case at issue.
It is undisputed that the Coxes sold the properties. There was no allegation made at the trial level that they did not sell the properties to buyers procured by Ms. Young. Notably, Ms. Cox concurred in those sales. As such, Ms. Cox accepted the benefit of Ms. Young's skill and effort and ratified the contracts.[5] We find no merit in this assignment of error.

The Cox's "non-ownership"
Likewise, we also reject the Cox's argument that the contracts are null due to the fact that they did not yet own two of the three properties at the time that the Listing and Marketing Agreements were entered into. The Coxes themselves produced evidence to establish that they did later purchase the properties and sell them. Further, they made no argument that the buyers were not procured by Ms. Young as was alleged in her petition. The trial court, applying the doctrine of after acquired title,[6] upheld the contracts.
Mr. Cox admits that both he and Ms. Young knew that he did not yet own the properties for which they were contracting to market for eventual sale. It would not be equitable to allow the Coxes to enter into a contract, accept the benefits of the contract, and then avoid payment based on information they knew at the time that they contracted. The sales were concluded by the Coxes with the purchasers procured by Ms. Young and the commission is owed.

CONCLUSION
Based on the plain language of the contracts, Ms. Young is owed 5% "of the gross amount of any agreement to sell, exchange or other type of transfer." Thus, according to the agreements to sell entered into by Mr. Cox, the fee Ms. Young earned was $25,190.50. That amount, however, is subject to a $200.00 reduction, per the Hunter's Lake agreement, and Ms. Cox has already been paid half of the Hunter's Way commission. We therefore find that the judgment of the trial court awarding Ms. Young $21,640.50 is correct. The judgment of the trial court is therefore affirmed. Costs of this appeal are to be assessed against appellants, Mr. and Mrs. Cox.
AFFIRMED.
NOTES
[1] Ms. Cox admittedly did not procure a buyer for the Rhonda Avenue property. She did allege, however, that she was owed reimbursement for the advertisement of the property. She was not awarded those expenses and she has not appealed that ruling. As such, the portion of the judgment concerning this property is not before us in this appeal.
[2] We note that the chronological index as well as the alphabetical index of the record in this matter list an erroneous file date for the filing of the interrogatories and request for production of documents. Although this mistake gives the appearance that the case had become abandoned by operation of law, such is not the case.
[3] It is undisputed that although this Listing and Marketing Agreement is identical to the others, it does contain an additional clause wherein Mr. Cox is granted a $200.00 reduction of the 5% commission fee.
[4] LSA-C.C. art. 2347 Alienation of community property; concurrence of other spouse

A. The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables, standing, cut, or fallen timber, furniture or furnishings while located in the family home, all or substantially all of the assets of the community enterprise, and movables issued or registered as provided by law in the names of the spouses jointly.
B. The concurrence of both spouses is required to harvest community timber.
[5] LSA-C.C. art. 1843 Ratification

Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority.
An express act of ratification must evidence the intention to be bound by the ratified obligation.
Tacit ratification results when a person, with knowledge of the obligation incurred on his behalf by another, accepts the benefit of that obligation.
[6] The "After-Acquired Title Doctrine" is well-established in our jurisprudence and stands for the proposition that if a vendor [the Coxes] sell property that they do not own, and subsequently acquire title to that property, the title will automatically vest in the vendee. Sabine Production Company, et al. v. Guaranty Bank & Trust Company, et al., 432 So.2d 1047, 1051 n.5, (La. App. 1 Cir.) writ denied, 438 So.2d 570 (La. 1983). The doctrine, therefore, protects subsequent buyers of property and their right of title.